## GARRISON *v.* THE CITY OF NEW YORK.

1. An act of the legislature of the State of New York, passed in 1871, in relation to the widening and straightening of Broadway, in the city of New York, authorizing the Supreme Court of the State to vacate an order made in 1870 confirming the report of commissioners of estimate and assessment respecting the property taken, from which order no appeal was allowable, if error, mistake, irregularity, or illegal acts appeared in the proceedings of the commissioners, or the assessments for benefit or the awards for damage, or either of them, had been unfair and unjust or inequitable or oppressive as respects the city or any person affected thereby, and to refer the matter back to new commissioners to amend or correct the report, or to make a new assessment, is not unconstitutional as impairing the obligation of contracts, or depriving a person of a vested right without due process of law.

2. In the proceeding to condemn property for public use, there is nothing in the nature of a contract between the owner and the State, or the corporation which the State in virtue of her right of eminent domain authorizes to take the property; all that the constitution of the State or of the United States or justice requiring in such cases being that a just compensation shall be made to the owner; his property can then be taken without his assent.

---

3. The proceeding to ascertain the compensation to be made to the owner of property taken for public use is in the nature of an inquest on the part of the State and is under her control; and to secure a just estimate of the compensation to be made she can vacate or authorize the vacation of any inquest taken by her direction where the proceeding has been irregularly or fraudulently conducted, or in which error has intervened, and order a new inquest, provided such methods of procedure be observed as will secure a fair hearing from the parties interested in the property. Until the property is actually taken and the compensation is made or provided, the power of the State over the matter is not ended.

ERROR to the Circuit Court for the Southern District of New York; the case being thus:

On the 17th of May, 1869, the legislature of the State of New York passed an act* providing for the widening and straightening of Broadway, in the city of New York, between Thirty-fourth and Fifty-ninth Streets. It required the commissioners of the Central Park of the city, within four months after its passage, to lay out and establish the lines of the street, so as to widen and straighten it, and to cause certificates and maps of the location of the new lines to be filed in certain public offices of the city, and declared that such certificates and maps should be final and conclusive as to the extent and boundaries of the proposed improvement; and that the part of Broadway thus laid out and established should be one of the public streets of the city in like manner and with the same effect as if it had been so laid out on the plan of the city under an act passed in 1807.† It also provided that any part of the street not embraced within the new lines should be closed, *and that all acts of the legislature then in force relating to the opening, widening, and improving of streets in the city should apply to that part of Broadway thus laid out, and to all proceedings under the act so far as they were applicable.*

The act further required the corporation counsel, when

---

* Entitled "An act to alter the map or plan of the city of New York, and to carry the alterations into effect."

† Entitled "An act relative to improvements touching the laying out of streets and roads in the city of New York, and for other purposes."

the commissioners had filed their maps and certificates, to take the proper steps on behalf of the city to acquire title to the lands needed, and for that purpose to apply to the Supreme Court, at any special term thereof, for the appointment of commissioners of estimate and assessment, who were authorized to assess upon the city such part of the expenses of the improvement as in their opinion would be just and equitable, not exceeding one-third of the whole, and to designate in their report, which was to be made within eight months after their appointment, the time for the opening of the street.

The commissioners thus appointed were required to make a just and equitable estimate and assessment of the loss and damage, if any, over and above the benefit and advantage, or of the benefit and advantage, if any, over and above the loss and damage, as the case might be, to the respective owners, lessees, occupants, or owners, and persons entitled to or interested in the lands and premises required, or affected by the proceedings, the assessment for benefit and advantage to be confined within certain designated limits.

The act further provided that all awards to the city should be placed by the chamberlain (the treasurer of the city) to the credit of the sinking fund, and that all other awards should be paid by him to the parties entitled thereto.

Under this act the measures authorized were taken, and three commissioners of estimate and assessment were appointed by the Supreme Court, who made a report of their proceedings, which was confirmed by order of the court on the 28th of December, 1870.

The report included, among numerous other awards, an award of $40,000 to one Garrison, as his damages for taking a portion of a leasehold estate held by him on Broadway, and it fixed the time for the actual opening of the new street at the 31st of December, 1870.

At the time of the passage of the act of May 17th, 1869, there was an act in force—an act, namely, of April 9th, 1813,—regulating proceedings for opening or improving

streets in the city of New York, and which, therefore (unless modified, as perhaps it was, by a certain act of 1818), by the provisions of the said act of 1869 was applicable to the improvement authorized. This act, it was asserted, applied to the proceedings under the special act of 1869, in the following particulars:

1st. In that it made the report of the commissioners of estimate and assessment, when confirmed by the court, "*final and conclusive*" upon all parties.

2d. In that it gave the corporation, on the confirmation of the report, *seizin in fee* of the lands taken, with a right of possession *instanter* without any suit or proceeding.

3d. In that it gave to each owner of land taken an absolute right to receive payment of the damages awarded to him within four calendar months after the confirmation of the report.

4th. In that in case of non-payment by the city within that period, after application, it gave to *each* owner of land taken a right to sue for and recover his damages with interest and costs, in any court of competent jurisdiction, and made the act itself and the report of the commissioners, with proof of the right and title of the plaintiff to the sum demanded, *conclusive evidence* in the action.

On the 27th of February, 1871, nearly two months after the confirmation of the report, the legislature passed an act authorizing an appeal from the order of confirmation on behalf of the city to be taken at any time within four months from the date of its entry. The act also provided that within this period, notwithstanding the pendency of the appeal, a motion might be made on behalf of the city to any justice of the Supreme Court, at a special term or chambers, to vacate the order; and made it the duty of the court or justice to hear the same, and declared that if it should appear that there was any error, mistake, or irregularity, or illegal act in the proceedings at any stage, or that the assessments for benefit or the awards for damage, or either of them, had been unfair and unjust, or inequitable and oppressive, as respects the city or any person affected thereby, the court

or justice should vacate the order of confirmation, which should then be void, and refer the matter back to new commissioners, who should proceed to amend and correct the report, or to make a new assessment, in whole or in part, as the court or justice should direct.

Under this act, upon notice to the parties interested, a motion was made on behalf of the city at a special term of the Supreme Court to vacate the order. Upon this motion affidavits were read and the parties were heard by counsel. The court vacated the order of confirmation and appointed new commissioners to amend and correct the report and make a new award of damage and assessment. In its order vacating the confirmation, and as a basis for the order, the court declared that it appeared that there had been error, mistake, irregularity, and illegal acts in the proceedings, and that the assessments for benefit and the award for damages had been unfair, unjust, inequitable, and oppressive, as respects the city and others.

On appeal from this order to the General Term,* by another party, to whom an award had also been made, the act was declared not to impair the obligation of contracts, nor to deprive any person of property without due process of law, and to be constitutional.

On further appeal to the Court of Appeals, that court held that independently of the act of 1871, the court had power to set aside, on motion, an order confirming a report of commissioners, for irregularity, mistake, or fraud.†

In both courts the constitutionality of the act was discussed, and both courts held that the provision of the act of 1813, that the report of the commissioners, when confirmed by the Supreme Court, shall " be final and conclusive," had reference only to an *appeal* from the order of confirmation, not to a motion to set it aside.

The present action was brought by Garrison against the city to recover the award of $40,000 made to him by the

---

\* Matter of Widening Broadway, 61 Barbour, 483.

† Matter of Application of Mayor, 49 New York, 150.

report of the first commissioners, the plaintiff alleging in his complaint the ownership of the leasehold estate taken, the proceedings for the estimate and assessment of damages, and the confirmation of the report by the Supreme Court on the 28th of December, 1870, and insisting that by force of the act of the legislature, and the laws therein referred to, the proceedings were final and conclusive, and that the fee of the property had vested in the city, and the right to the payment of the award had vested in the plaintiff.

In answer to this action the city set up the proceedings by which the award was vacated, and insisted that the title to the premises mentioned had not vested in the city, and that the right to the amount awarded had not vested in the plaintiff.

To this plea the plaintiff demurred, on the ground that the act of February 27th, 1871, was repugnant to the Constitution of the United States in that it impaired the obligation of a contract, and to the constitution of the State, in that it undertook to divest a vested right contrary to the law of the land and without due process of law.

The court overruled the demurrer, sustained the plea as a bar to the action, and gave judgment for the defendant. To reverse that judgment the case was brought to this court, and here the plaintiff renewed the same objections urged on the demurrer in the court below.

*Messrs. George Ticknor Curtis and J. C. Shaw, for the plaintiff in error; Messrs. A. J. Vanderpool and E. Delafield Smith, for the defendant in error.*

Mr. Justice FIELD, after stating the facts of the case, delivered the opinion of the court, as follows:

To reverse the judgment of the Circuit Court, the plaintiff contends that the act of the legislature of New York, of February 27th, 1871, was repugnant to the Constitution of the United States in that it impaired the obligation of a contract, and to the constitution of the State in that it under-

took to divest a vested right contrary to the law of the land and without due process of law.

As a basis for his argument he assumes that under the statute of the State relating to the opening and improvement of streets in the city of New York, passed in 1813, and which is one of the laws referred to in the act of 1869, and made applicable to the improvement authorized, the proceedings of the commissioners, when their report was confirmed by the Supreme Court, were so far final and conclusive of the right of the city to the property and of the plaintiff to the award, that neither were subject to any legislative or judicial interference.

The same position here urged was relied upon in the Supreme Court and the Court of Appeals of the State on the appeal from the order vacating the confirmation taken by one of the parties to whom an award had been rendered.*

And in both courts it was held that the provision in the statute of 1813, which declares that the report of the commissioners of estimate and assessment, when confirmed by the court, shall be "final and conclusive," only meant that no appeal should lie from the order of confirmation to a higher court, and that it did not preclude an application to the court to vacate the order for mistake, irregularity, or fraud in the proceedings; that the Supreme Court had power to hear such motions in ordinary cases of judgments and orders in suits there pending, and that no reason existed against the possession or exercise of the power in cases of this character. The provision in question, said the Court of Appeals, "plainly never intended to give a vested interest in a mistake and irregularity or fraud, whereby important rights of property were acquired or lost. It had reference simply to an appeal upon the merits, and is satisfied with that. All judgments are liable to be set aside for fraud, mistake, or irregularity, and a vested interest therein is subject to that liability."

---

* In the Matter of Widening Broadway, 61 Barbour, 483; and 49 New York, 150.

The Supreme Court held that the act of 1871 was constitutional. The Court of Appeals held that, independent of the act and without passing upon its validity, the Supreme Court had authority to set aside the order upon the grounds stated.

If the views of either of these courts be correct, they dispose of the questions in this case. And the construction of the statute of the State by the Court of Appeals, and its decision as to the powers of the Supreme Court of the State to correct or set aside its own judgments, upon application within reasonable time, for mistake, irregularity, or fraud, are conclusive upon us.

There is, therefore, no case presented in which it can be justly contended that a contract has been impaired. It may be doubted whether a judgment not founded upon an agreement, express or implied, is a contract within the meaning of the constitutional prohibition. It is sometimes called by text-writers a contract of record, because it establishes a legal obligation to pay the amount recovered, and, by fiction of law, where there is a legal obligation to pay a promise to pay is implied. It is upon this principle, says Chitty, that an action in form *ex contractu* will lie on a judgment of a court of record.*  But it is not perceived how this fiction can convert the result of a proceeding, not founded upon an agreement express or implied, but upon a transaction wanting the assent of the parties, into a contract within the meaning of the clause of the Federal Constitution which forbids any legislation impairing its obligation. The purpose of the constitutional prohibition was the maintenance of good faith in the stipulations of parties against any State interference. If no assent be given to a transaction no faith is pledged in respect to it, and there would seem in such case to be no room for the operation of the prohibition.

In the proceeding to condemn the property of the plaintiff for a public street, there was nothing in the nature of a contract between him and the city. The State, in virtue of her

---

* Chitty on Contracts, Perkins's edition, 87.

right of eminent domain, had authorized the city to take his property for a public purpose, upon making to him just compensation. All that the constitution or justice required was that a just compensation should be made to him, and his property would then be taken whether or not he assented to the measure.

The proceeding to ascertain the benefits or losses which will accrue to the owner of property when taken for public use, and thus the compensation to be made to him, is in the nature of an inquest on the part of the State, and is necessarily under her control. It is her duty to see that the estimates made are just, not merely to the individual whose property is taken, but to the public which is to pay for it. And she can to that end vacate or authorize the vacation of any inquest taken by her direction, to ascertain particular facts for her guidance, where the proceeding has been irregularly or fraudulently conducted, or in which error has intervened, and order a new inquest, provided such methods of procedure be observed as will secure a fair hearing from the parties interested in the property. Nor do we perceive how this power of the State can be affected by the fact that she makes the finding of the commissioners upon the inquest subject to the approval of one of her courts. That is but one of the modes which she may adopt to prevent error and imposition in the proceedings. There is certainly nothing in the fact that an appeal is not allowed from the action of the court in such cases, which precludes a resort to other methods for the correction of the finding where irregularity, mistake, or fraud has intervened.

Until the property is actually taken, and the compensation is made or provided, the power of the State over the matter is not ended. Any declaration in the statute that the title will vest at a particular time, must be construed in subordination to the constitution, which requires, except in cases of emergency admitting of no delay, the payment of the compensation, or provision for its payment, to precede the taking, or, at least, to be concurrent with it. The statute of 1818 would also seem so far to modify the act of 1813 as

to require a formal acceptance of the land on the part of the corporation before the title can vest.*

The objection to the act of 1871, that it impairs the vested rights of the plaintiff, and is, therefore, repugnant to the constitution of the State, is already disposed of by what we have said upon the first objection. There is no such vested right in a judgment, in the party in whose favor it is rendered, as to preclude its re-examination and vacation in the ordinary modes provided by law, even though an appeal from it may not be allowed; and the award of the commissioners, even when approved by the court, possesses no greater sanctity.

JUDGMENT AFFIRMED.

---

* Strang *v.* New York Rubber Co., 1 Sweeny, 86, 87.