# THE DISTRICT OF COLUMBIA

*v.*

## PROSPECT HILL CEMETERY.

---

## PROSPECT HILL CEMETERY

*v.*

## THE DISTRICT OF COLUMBIA.

---

## THE DISTRICT OF COLUMBIA

*v.*

## BARBOUR.

---

## THE DISTRICT OF COLUMBIA

*v.*

## MOORE.

---

PRACTICE; APPEALABLE ORDERS; CONDEMNATION PROCEEDINGS; DAMAGES; BENEFITS; REVERSIBLE ERROR.

1. A motion to vacate an order of the Supreme Court of this District, confirming a report of commissioners in condemnation proceedings, is in the nature of a motion for a new trial, and is not appealable to this court.

2. Where an act of Congress directing that court to vacate its order of confirmation in such proceedings is passed subsequent to the expiration of the term at which the order was made and to the removal of the cause to this court on appeal, an appeal from such order will not be entertained.

3. An order ratifying the report of the commissioners in such proceedings does not transfer the title of the property nor affect any vested rights; and therefore an act of Congress directing

5 Ct. App.—32

the court to vacate its order of condemnation cannot be construed to be an abandonment by the Government of its intention to take the land.

4. A report of commissioners as to the value of the land involved in condemnation proceedings is equivalent to the verdict of a jury, and cannot be reviewed on an appeal from an order of the court confirming the report, upon the ground that the damages awarded are excessive.

5. Where, by the condemnation of a portion of a tract of land to be used as a highway, the owner is divested of the beneficial use of the balance of the tract, he is entitled to compensation for the injury sustained to the portion of the tract not actually taken.

6. An instruction by a trial court to the commissioners in condemnation proceedings will not, at the instance of the Government, be held to be erroneous, which directs them to estimate the value of the land to be taken with reference to its present uses. If erroneous, such error would operate against the owner and not the Government.

7. Where a statute providing for the condemnation of land for highway extension purposes makes no provision for the assessment of benefits or damages, it is improper to charge against the land owner benefits which may accrue to the remainder of his property by the extension of a highway through a portion of it, or to allow such benefits to be set off against the value of the land taken.

8. The public authorities, in the pursuit of an avowed purpose to acquire certain land by condemnation for public use, may not, while persisting in the avowal of such purpose, withdraw from the inquisition and the judgment of the court thereon, because they are dissatisfied with the result, and seek by other methods to procure a smaller valuation of the desired property.

Nos. 359, 373, 419, and 420. Submitted February 4, 1895. Decided March 4, 1895.

HEARING on an appeal and cross-appeal from an order of the Supreme Court of the District of Columbia sitting as a District Court of the United States, confirming the report of the commissioners in condemnation proceedings; and an appeal by the District of Columbia from a decree in an equity suit granting a permanent injunction against further or other condemnation proceedings. *Order modified and decree affirmed.*

The COURT in its opinion stated the case as follows:

These several appeals all refer to the same subject matter,

and were argued together. They arise out of proceedings instituted in the Supreme Court of the District of Columbia under an act of the Congress of the United States for the opening of an extension beyond the limits of the city of Washington of the street known as North Capitol street.

The act of Congress referred to was one of December 21, 1893, entitled "An act to extend North Capitol street to the Soldiers' Home." By it the Commissioners of the District of Columbia were directed to open and grade North Capitol street from T street to the Soldiers' Home, and to condemn, in the manner provided by law prior to March 2, 1893, for the condemnation of land in the District of Columbia, such of the lands of the Prospect Hill Cemetery and of Annie E. Barbour as might be necessary for the extension of said street. The law in force prior to March 2, 1893, is found in an appropriation act of August 30, 1890 (26 Stat. 371, 412), in which it was provided that, for the purpose of procuring land in the city of Washington for the construction of additional buildings for the use of the Government Printing Office, applications should be made by petition to the Supreme Court of the District of Columbia, which, after proper notice to the parties in interest, should appoint three capable and disinterested persons as commissioners to appraise and value the land proposed to be taken, and to return their valuation thereof to the court, and that, upon confirmation by the court of their report, the President of the United States should, if he thought the public interest required it, cause payment to be made to the parties in interest in accordance with the judgment of the court, and upon such payment the lands should be deemed to be condemned and taken by the United States for the public use. And it was further provided in the act that thereafter, in all cases of the taking of property in the District of Columbia for public use, the proceedings should be as in this act prescribed.

Prior to this act of August 30, 1890, the matter of the construction of public highways in the District of Columbia

outside of the limits of the cities of Washington and George-town, and of the acquisition of land for the purpose by condemnation, was regulated by Chapter 11 of the Revised Statutes of the United States for the District of Columbia (Secs. 252 to 265), by which it was provided that the valuation of the lands deemed proper to be condemned should be made by a jury of seven persons summoned by the marshal, with a revaluation, if demanded by dissatisfied parties in interest, to be made by a second jury of twelve persons, of whom the decision of a majority should be final and conclusive.

In this condition of the law, the present proceedings were instituted by the Commissioners of the District of Columbia in the Supreme Court of the District sitting as a District Court of the United States for this District. In their petition they stated the ownership of the parties in interest and the amount of land which was required for the proposed extension, and prayed for a citation to the parties and for the appointment of three commissioners in accordance with the law to appraise the value of the required land. Citation was accordingly issued. Mrs. Barbour and the Prospect Hill Cemetery Company appeared and answered, objecting to the proceedings. The other parties, who were the heirs at law or representatives of one David Moore, deceased, and who claimed one-half interest in the land held by Annie E. Barbour, do not seem to have answered.

Three commissioners were appointed by the court to view the land and appraise its value, and return their appraisement to the court. Two special instructions were given to them by the court for their guidance, it does not appear at whose request; and one instruction was asked on behalf of the District of Columbia, and refused. Exception seems to have been taken to this refusal by the attorney for the District, and also to the granting of the other instructions, and the case is here, it is presumed, on these exceptions.

First in order in the record is the instruction requested on

behalf of the District of Columbia, and which was refused. It is as follows:

"That it is the duty of said commissioners in making such appraisement to take into consideration the benefits, if any, appearing from the testimony produced before them which the extension of said street may be to each abutting property owner by enhancing the value of his, her or its land, and they will return to the court their appraisement so made of the value of the interests of all persons respectively in the land taken for said street."

The two instructions that were given were as follows (the two paragraphs of the first apparently being transposed):

1. "The commissioners shall also make an alternative appraisement, in which, after ascertaining the value of the land as before directed, they shall ascertain whether the land of the parties adjacent to the proposed street will be damaged by the opening of said street, and will estimate the amount of said damages in each case. If, on the contrary, they are satisfied that the land will be benefited by being enhanced in value thereby, they shall find the value of such benefit in each case and deduct it from the value of the land taken from the parties respectively for the said street.

"The court being of opinion that the owners are entitled to the full value of the land to be taken without deductions, the commissioners are directed that in making their appraisement of the land claimed by Annie E. Barbour and others and the cemetery the appraisers are to hear the evidence of the parties and appraise the said property at its present fair market value, without reference to any claim of benefit or damage to remaining property, and in estimating the value they are to consider the prices paid for other property in the same vicinity."

2. "In respect of the property of the Prospect Hill Cemetery the commissioners are instructed that, in estimating the value of the land taken they are to estimate its value for the use to which it is applied, viz, the purposes of said cemetery."

Thereupon, the commissioners, after having viewed the land and taken testimony, none of which, however, appears in the record, made their appraisement and returned their report of it to the court. Substantially it was as follows: The portion of the Barbour land required they estimated to be worth $21,078, that in their opinion, " being its present fair market value, without reference to any claim of damage or benefit to the remaining property of said owners." The portion of land proposed to be taken from the Prospect Hill Cemetery they estimated to be of the value of $45,724, that, in their opinion, being " its value for the use to which it is applied, namely, cemetery purposes."

Under the instruction of the court, by which they were directed to make an alternative appraisement of benefits, if any, to adjoining lands, they reported that the remaining lands of Annie E. Barbour and others would be enhanced in value to the extent of $18,530, which, if deducted from the value of the lands taken, would leave a balance only of $2,548 due for these lands. They found no benefit to accrue to the remaining lands of the cemetery, but, on the contrary, a damage to the amount of $5,962.

The District of Columbia filed exceptions to this report, on the ground that the appraisements were excessive and erroneous, and that the commissioners had misapprehended or misapplied the instructions of the court. And in support of their exceptions they filed affidavits of one Joseph Paul and one Jacob H. Happ. The court, however, upon hearing of the report and of the exceptions thereto, confirmed the report in two respects: 1st. In the valuation of the land of Annie E. Barbour and others at the sum of $21,078, " without reference to any claim of damage or benefit to the remaining property of said owners." 2d. In the valuation of the land of the Prospect Hill Cemetery at the sum of $45,724. And it disaffirmed and disallowed so much of the report as found benefits to the Barbour lands to the value of $18,530, and damage to the remaining lands

of Prospect Hill Cemetery to the extent of $5,962, the court being of the opinion, as it stated, " that under the law governing this proceeding neither benefits nor damages to the remainder of any tract of land a part of which is condemned can be considered."

From the order of confirmation an appeal was taken to this court by the District of Columbia; and the Prospect Hill Cemetery appealed from so much of the order as disallowed the amount of the damage done to the remainder of its land.   These appeals were taken on June 23 and June 25, 1894, respectively, and the record of the cause was promptly filed in this court on June 30, 1894.   And it may be added here that the term of the Supreme Court of the District of Columbia sitting as a District Court of the United States, at which this order of confirmation was made and which had begun on the first Monday of January, 1894, came to an end, and a new term began, on the first Monday of July, 1894.

Subsequently, on August 7, 1894, Congress passed an act of a somewhat unusual and extraordinary character, in which it provided as follows:

" The Supreme Court of the District of Columbia is hereby directed to vacate its order confirming the report of the commissioners appointed to appraise the value of the lands of the Prospect Hill Cemetery and Annie E. Barbour, proposed to be taken for the extension of North Capitol street under the act approved December 21, 1893, entitled 'An act to extend North Capitol street to the Soldiers' Home;' and the Commissioners of the District of Columbia are hereby directed to proceed to carry into effect said act, and to acquire the title by condemnation, according to Chapter 11 of the Revised Statutes of the United States relating to the District of Columbia:

" Section three of the act approved August 30, 1890, entitled 'An act,' etc., etc., shall not be construed to apply to

the condemnation of land for public highways, nor to repeal Chapter 11 of the Revised Statutes of the United States relating to the District of Columbia, in regard to public highways, roads and bridges."

This also is found in an appropriation act (Chap. 232, 53d Congress, 2d Session, p. 243, 251). In pursuance of it, the District of Columbia, by its attorney, on August 13, 1894, filed a motion in the Supreme Court of the District of Columbia sitting as a District Court of the United States, and entitled in this cause, to vacate the order of confirmation which had been rendered at the previous term. The motion does not seem to have been called up for the action of the court until December 22, 1894, when it was overruled; and from the order overruling this motion the District of Columbia took the appeal which is numbered 419 on our docket.

On October 4, 1894, David Moore, Francis M. Moore, Sarah M. Davidson, Mary A. Johnson and Josephine M. Bridget, claiming to be the owners of one-half undivided interest as tenants in common with Annie E. Barbour in the Barbour tract, filed their bill in equity in the Supreme Court of the District of Columbia against the District of Columbia and its Commissioners, and also against Annie E. Barbour and Prospect Hill Cemetery, in which, after setting forth the proceedings previously thereto taken, as hereinbefore stated, they alleged that the Commissioners of the District of Columbia, dissatisfied that they had not been allowed the conjectural benefits which they had sought to procure to be assessed against the lands of the parties in interest, were now proceeding to accomplish their purpose, and to institute new proceedings under the act of Congress last cited, and that their proposed action was in violation of the judgment of the court and in derogation of the rights of the parties, and the prayer of the bill was for an injunction against the Commissioners from proceeding as they had given public notice that they would do. To this bill the

District of Columbia interposed a demurrer, and the demurrer was overruled. The District electing to stand by the demurrer, a perpetual injunction was thereupon issued against the District and the Commissioners, restraining them from any further or other proceedings whatever for the condemnation of the land in question. From the decree granting this perpetual injunction the District of Columbia appealed to this court; and the appeal is that which is numbered as 420 on our docket.

*Mr. S. T. Thomas,* Attorney for the District of Columbia, and *Mr. A. B. Duvall,* Assistant Attorney, for the District of Columbia:

1. As to the act of Congress directing the court below to vacate its order confirming the awards.

In the absence of statutory provision it is perfectly competent for the public to abandon proceedings to acquire private property for public use. *O'Neil* v. *Freeholders of Hudson,* 41 N. J. L. 161.

2. The act of Congress of August 14, 1894, was a legislative abandonment of the proceedings. Such legislation is not unusual. The Supreme Court of the United States in the case of the *Railroad Co.* v. *Nesbit,* 10 How. 395, held that an act of the legislature of Maryland requiring the Baltimore County Court to set aside an inquisition of damages for land taken by a railroad corporation, after the inquisition had been confirmed, did not impair the obligation of a completed contract in existence when it was passed. See also *Garrison* v. *New York,* 21 Wall. 196; *Graff* v. *Baltimore,* 10 Md. 544; *State* v. *Graves,* 43 Md. 219; *Mayor* v. *Musgrave,* 48 Md. 212; *Black* v. *Mayor,* 50 Md. 235; *Railroad Co.* v. *Bradford,* 6 W. Va. 220.

3. Benefits are an element of just compensation. The court below erred in refusing to instruct the jury that benefits to the land remaining to abutting owners should be taken into consideration. The act of Congress of August 30,

1890, was in respect of a site for the Government Printing Office, and comprehended the taking of the entire property of an individual as a site for a public building. The act declared that its provisions "as respects the application by the proper officer to the Supreme Court of the District of Columbia and the proceedings therein shall be as in the foregoing provisions declared." This language does not show that benefits are to be excluded in cases of land taken for a public highway. There is manifestly a very great difference, in the matter of benefits, in taking land for a site for a public building and taking it for a public highway. In one case no benefits result to the owner for his remaining land, if any, whereas in the other, his remaining land, abutting the highway, may be greatly benefited. *Young* v. *Harrison*, 17 Ga. 30.

4. The doctrine of benefits applies with equal force to Prospect Hill Cemetery. Its officers, as early as 1890, considered it was to their interest, in view of the rapid increase in value of suburban property, to sell their land and purchase ground for a cemetery elsewhere, and Congress expressly authorized the cemetery company to sell its land and go elsewhere, and yet the court below held that the cemetery company was entitled to the fair market value of its land without deduction for benefits.

The Supreme Court in *Navigation Company* v. *United States*, 148 U. S. 312, has recently expressed some views contrary to our contention. But it was unnecessary in that case to decide the point, since the only question before the court was, whether in proceedings taken by the United States to condemn a lock and dam belonging to the navigation company, it was entitled, under the provisions of the Fifth Amendment to the Constitution, to recover compensation for its franchise, as well as for the value of the tangible property taken. There was no pretense that the taking of the company's property benefited it in anywise. And the court simply held that its franchise was property for which it was

entitled to compensation, so that, so far as the question of benefits as an element of just compensation is concerned, the case is not authority. The State of Mississippi is the only one in which the doctrine that benefits cannot be considered at all in cases of taking property for public uses is maintained. *Brown* v. *Beatty,* 34 Miss. 227; *Isom* v. *Railroad,* 36 Miss. 300. But the Mississippi cases turn on the 13th Section of the Bill of Rights of that State.

See, also, on the doctrine of benefits, Lewis on Em. Domain, Sec. 471; *Railroad Co.* v. *Waldron,* 11 Minn. 515; Cooley Con. Lim. 567.

*Mr. A. S. Worthington, Mr. W. L. Cole* and *Mr. Wm. G. Johnson* for the appellees David Moore and others:

1. There was no error in the judgment of the court excluding from the consideration of the appraisers as an element in diminution of value of the land taken any supposed benefit to remaining land. The act of August 30, 1890, under which these proceedings were prosecuted, contains no reference to any such claim, and in no way contemplates the consideration of benefits by the appraisers, and as Congress had not seen fit to embrace such an idea in dealing with this property, it was not within the duty or power of the court to introduce it in this case.

2. The court below was clearly right in overruling the motion to vacate the previous judgment, but was, under all rules of practice and procedure, absolutely without power to grant the motion, because it was not made at the same term at which the judgment was entered, and, further, because the case was pending on appeal from the very judgment which the motion sought to have vacated.

Further, the provision of the act of August 7, 1894, under which it was sought to have the judgment vacated, is unconstitutional and void. For a clear statement of the absolute immunity of the Federal judiciary from the control or interference of Congress, see *United States* v. *Klein,* 13 Wall.

128.    The cases of *Garrison* v. *New York*, 21 Wall. 196, and *Railroad Co.* v. *Nesbit*, 10 How. 395, relied upon in support of this extraordinary exercise of legislative power, will be found upon examination to furnish no such support whatever.

3. The act cannot be treated as in effect a mere abandonment of the proceedings, for by the terms of the act it is not an abandonment, but a very active prosecution of them, the Commissioners being directed to carry out the act of December 21, 1893, and to acquire title by condemnation.

The purpose of the present act is plain. It is an attempt to "experiment" with the rights of the parties. Being dissatisfied with the amount of the award and having no ground for reversal of the judgment in this court, the appellant, while still adhering to that appeal in this court, sought to aid itself by an act of Congress, by which the judgment in this case would be reversed, and while the cause would then remain pending in the court below appellant should have the privilege of having a contemporaneous proceeding in another forum under another law. And, presumptively, if that proved unsatisfactory and this species of legislation be valid, then another mode may be resorted to until a result is reached satisfactory to the District, or until the owners, having expended the value of the land in defending the various abortive proceedings, to avoid further expense, give up the property or abandon all effort for protection. That such is the logical consequence of affirming such power in the legislature no one can deny. That it could be lawful no one will assert. *Rogers* v. *St. Catharines*, 3 Mo. App. 41.

4. As it appeared from the record that the appellants had already attempted to proceed under Chapter 11 of the Revision, in pursuance of the act of August 7, 1894, the parties were clearly entitled to an injunction against such proceedings, because (1) the other proceedings were still pending and undetermined; (2) the act of August 7, 1894, which

alone authorized the proceeding, is unconstitutional. But there is a further ground justifying and requiring the allowance of the injunction. It is alleged in the bill that it is the avowed object of the appellants to proceed to a condem nation of the land under the provisions of Chapter 11 of the Revision before a marshal's jury, where the court would have no regulative, directory, or revisory power, and under that statute to have the jury consider, in diminution of compensation, certain imaginary, illusive, and conjectural benefits supposed to result to remaining land from the act of taking for the purposes of a street. The consideration of such benefits in diminution of compensation for value is not admissible. *Vanhorne's Lessee* v. *Dorrance*, 2 Dall. 304.

5. The direct question as to whether such supposed benefit can be set off against the compensation for the land under the Federal Constitution has never been decided, so far as counsel for appellees have been able to discover; yet the Supreme Court has distinctly decided that Congress has not the power to declare that such elements shall enter into the computation of value. *Navigation Co.* v. *United States*, 148 U. S. 312; citing with approval *Isom* v. *Miss. Central R.R. Co.*, 36 Miss. 300.

If benefits, which may possibly or will probably, even, accrue in the future to the remaining property from the use to which the property taken is to be put, can be considered as payment, how is it possible to pay by that means the "full and perfect equivalent" "before" the property is taken? It is manifestly impossible to apply such a principle and be consistent with the decision of the Supreme Court. The payment must be made now, before taking, and must be a "full and perfect equivalent." It is obvious that the only way to satisfy this requirement is to pay in money the full actual value. Will any one pretend that the Government can take the land on credit, agreeing to pay for it in the future? Or can it pay part cash and the balance on time without the consent of the owner? Manifestly not. Therefore, neither

can it pay part cash and part in prospective and conjectural benefits. If it cannot lawfully take the land upon an agreement to pay its cash value in a sum certain at a future day certain, how can it pay part cash and part in a benefit uncertain at a future day uncertain? Such a rule substitutes speculation for certainty, and conjecture for substantial right. Such a doctrine has been repudiated by the best considered decisions. *Jacob* v. *Louisville*, 9 Dana, 114; *Wood* v. *Railroad*, 2 Swan, 422; *Shipley* v. *Railroad*, 34 Md. 336; *McReynolds* v. *Railroad*, 106 Ill. 152; *Railroad* v. *Helm*, 8 Bush, 681; *Isom* v. *Miss. Cent. R.R.*, 36 Miss. 312.

*Mr. W. F. Mattingly* and *Mr. Henry Wise Garnett* for the Prospect Hill Cemetery and Annie E. Barbour.

Mr. Justice Morris delivered the opinion of the Court:

It is quite clear from this statement that the controversy in all these cases is substantially the same, and that they can all be disposed of together, as they were argued together.

Several interesting and important questions are raised on the record, although none perhaps entirely novel. They are questions alike interesting to the citizen and the public, inasmuch as they concern one of the most important attributes of sovereignty, the right to take private property for public use, upon the payment of just compensation therefor, in accordance with the dictates of natural justice and the requirements of our fundamental law. And there are questions, too, of a technical character that lie upon the threshold of our inquiry and demand our preliminary consideration.

1. First among these latter is the question whether the appeal of the District of Columbia from the order of the court below of December 22, 1894, whereby that court refused to vacate its previous order of confirmation of the report of the commissioners for the appraisement of the land sought to be taken, can be sustained. We do not think that it can. The motion made to vacate the order was in the nature of a motion for a new trial (*Railroad Co.* v. *Nesbit*, 10 How. 395;

*Garrison* v. *New York*, 21 Wall. 196); and it is well settled law that from an order refusing or granting such a motion no appeal will lie. The motion is one addressed to the discretion of the court; and from the exercise of that discretion, in the absence of statute, there is no right of appeal to a purely appellate tribunal.

If it be argued that the act of Congress of August 7, 1894, which directed the Supreme Court of the District of Columbia to vacate the order of confirmation, took away the discretion which was in the court to refuse or grant the motion to vacate the order at its pleasure, we do not see that the statute, if it was one within the constitutional power of Congress to enact, alters our appellate jurisdiction in any manner. The mandate of that statute was addressed by Congress to the Supreme Court of the District of Columbia in a matter over which that court was presumed to have sole and exclusive cognizance and jurisdiction, and the action of that court upon the mandate was not such as to present to us any question for review. In the absence of the statute, as we have stated, we would not have any authority to review such action; and the statute does not, either expressly or by implication, confer any such authority upon us. A writ of error or appeal will lie only when it is authorized either by special or general law. *United States* v. *Nourse*, 6 Pet. 470, 494; *Ex parte Zellner*, 9 Wall. 244. It will not lie where there is a special statutory jurisdiction of an unusual character conferred upon the court below, without any provision for an appeal. *United States* v. *Nourse*, 6 Pet. 470; *Hayes* v. *Fischer*, 102 U. S. 121; *Ex parte Kearney*, 7 Wheat. 38; *Durousseau* v. *United States*, 6 Cranch, 307, 313.

But even if we were to review the decision of the court below upon this motion, it is not apparent how we could do otherwise than affirm it. That court was without jurisdiction to entertain the motion. The cause had been removed from it by appeal to this court, and the term had elapsed at which the order of confirmation had been rendered. If that

order is to be regarded as a final order, then the power of
the court over it plainly ended with the term, except in so
far as, under the act of Maryland of 1787, Ch. 9, Sec. 6, it
might have been set aside for fraud, deceit, surprise, or
irregularity, no one of which is suggested here. If, on the
other hand, the order of confirmation is not to be regarded
as a finality, but merely as an interlocutory proceeding in a
cause still pending before the court, such contention, besides
being fatal to the main appeal taken by the District of Col-
umbia, would be wholly unavailing for the purpose of this
appeal. For certainly, if the order of confirmation was not
a final order, an order which refused to vacate it could have
in it no greater elements of finality. So that in any aspect
of this case, we cannot entertain the appeal taken from the
order of December 22, 1894; and that appeal must be dis-
missed.

Again: If we are asked to give effect to the act of Con-
gress of August 7, 1894, as a legislative declaration of pur-
pose on the part of the United States to decline to take the
land which was proposed to be taken, it is not apparent
how we can do this. No action of this court, nor indeed of
the Supreme Court of the District of Columbia, is required
for that purpose. There is no obligation on the part of the
United States to take the land at its appraised value. The
order of the court does not transfer the title; there are no
vested rights affected by that order (*Garrison* v. *New York*,
21 Wall. 196); the action of the court is simply intended to
determine the value of the land as preliminary to further
action by the public authorities. While, therefore, the
United States, as well as all the other parties in interest, are
bound by the final judgment of the court in the determi-
nation of the matter of value, they are not bound to proceed
to take the land; and there is no necessity for the communi-
cation to the court of their refusal so to do. In this view of
the case, we do not deem it necessary to discuss the power
of the legislative body to direct action by the court such as

was here directed to be taken, or to consider the pertinency in this regard of the two cases of *Railroad Co.* v. *Nesbit,* 10 How. 395, and *Garrison* v. *New York,* 21 Wall. 196, which have been cited, or of the last mentioned case, also in 49 N. Y. 150.

2. In the second place, with respect to the main appeal of the District of Columbia, that from the order of confirmation of the report of the commissioners of appraisement, no question is raised as to the right of appeal, notwithstanding the peculiar character of the proceedings ; and we may assume that, in connection with the equity suit instituted by the heirs of David Moore, and into which all the other proceedings have been incorporated, the appeal may be sustained. But then, so far as concerns this appeal by the District, we fail to find anything on which to review the decision of the court below. The burden of complaint is that the valuation of the land was excessive. But we have not the means of correcting that, even if we had the authority so to do. There is nothing whatever in the record, except two *ex parte* affidavits, which, of course, we cannot regard, to show excessive valuation, or to show the grounds upon which the valuation was based. We cannot review, much less reverse, upon such a record as this. To the commissioners, and not to the court, it must be remembered, the law has committed the matter of the determination of value. Their report is the equivalent of a verdict of a jury ; and the court should only interfere with the one as, under the general rules of law, it would interfere with the other.

3. The only question which we can regard as fairly raised by the record for our consideration is, whether, in their appraisement of the value of the land actually proposed to be taken, the commissioners were justified in including the value of damages or benefits to the adjacent land. And this question is raised by the instructions given to the commissioners by the court and their so-called alternative report thereupon. The question of damages affects Prospect Hill

5 Ct. App.—33

Cemetery, and that of benefits the owners of the Barbour tract; for no benefit is found to accrue to the cemetery, and no damage to the owners of the Barbour tract.

The commissioners found that, besides the taking of an actual piece of its land valued at $45,724, the remaining land of the Prospect Hill Cemetery was damaged by the taking to the extent of $5,962. The court below disallowed this damage. We think there was error in this. The inherent power of sovereignty to take private property for public uses has no limitation upon it but that of making just compensation for that of which it deprives the citizen; and that compensation with us necessarily means legal tender money of the United States, the medium of exchange by which all other demands and liabilities may be lawfully discharged. The compensation must be co-extensive with that which is taken, otherwise it would not be just compensation. That which is taken is that of which the owner is deprived. If by the taking of part of his holding the use of the remainder is impaired or destroyed, with what justice can it be said that just compensation to him would be found in the actual value of that which was actually taken? It has been held by the Supreme Court of the United States that it is not necessary that property should be absolutely taken, in order to give a right for compensation under the constitutional guarantee; and that serious interruption to the common and necessary use of property is the equivalent of taking within the meaning of the constitutional provision. The taking of part of one's property may involve the deprivation of the remainder of a valuable spring, or of a stream of running water, or of a convenient road, or may require the reconstruction of buildings or fencing, or may, in fact, render such remainder absolutely useless for all the purposes for which it had been used. Can it be that such depreciation or destruction of value is not covered by the safeguard of the Constitution.

In the case of *Pumpelly* v. *Green Bay Company*, 13 Wall.

166, 177, the Supreme Court of the United States, by Mr. Justice Miller, said, in the vigorous language for which that eminent jurist was noted:

" It would be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the Government, and which has received the commendation of jurists, statesmen and commentators as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that if the Government refrains from the absolute conversion of real property to the uses of the public, it can · destroy its value entirely, can inflict irreparable and permanent injury to any extent, can in effect subject it to total destruction, without making any compensation, because in the narrowest sense of that word, it is not *taken* for public use.   Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the Government, and make it an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors."   .   .   .

" We are not unaware of the numerous cases in the State courts in which the doctrine has been successfully invoked that for a consequential injury to the property of the individual arising from the prosecution of improvements of roads, streets, rivers and other highways, for the public good, there is no redress; and we do not deny that the principle is a sound one, in its proper application, to many injuries to property so originating.   And when, in the exercise of our duties here, we shall be called upon to construe other State constitutions, we shall not be unmindful of the weight due to the decisions of the courts of those States. But we are of opinion that the decisions referred to have gone to the uttermost limit of sound judicial construction

in favor of this principle and in some cases beyond it ; and that it remains true that where real estate is actually invaded by superinduced additions of water, earth, sand or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle."

The case of *Pumpelly* v. *Green Bay Company* was one in which, in the course of the construction of a dam for the improvement of the outlet of a lake in Wisconsin, the waters of the lake were raised so high as to overflow the lands of an adjacent owner; and this was adjudged to be a taking of his lands under the right of eminent domain, for which he was entitled to compensation.

Mr. Cooley, in his work on Constitutional Limitations, sums up the law as deduced from the authorities, as follows: "Any injury to the property of an individual which deprives the owner of the ordinary use of it, is equivalent to a taking, and entitles him to compensation.   Water front on a stream, where the tide does not ebb and flow, is property, and, if taken, must be paid for as such.   So with an exclusive right of wharfage upon tidewater.   So with the right of an owner of land to use an adjoining street, whether he is the owner of the land over which the street is laid out or not.   So with the right of pasturage in streets, which belongs to the owners of the soil.   So a partial destruction or diminution of the value of property by an act of the Government which directly and not merely incidentally affects it, is to that extent an appropriation."   Cooley's Constitutional Limitations, page 544, and cases in notes.

A clear distinction is recognized between direct and consequential or incidental damage to property.   The latter is remote, vague and indefinite, and is regarded as *damnum absque injuria*; such, for instance, as might result from the

establishment of a railroad or a public institution in one's neighborhood.   This is not regarded as coming within the constitutional provision.   But the taking of property which, by its very taking, divests the owner of the same beneficial use of the remainder of his property as he had previously enjoyed, is undoubtedly direct damage to that remainder for which he is entitled by the Constitution to just compensation.

We are not advised by the report of the commissioners in the present case whether any element of consequential or incidential damage entered into their finding; and we are not justified in assuming that there was any such element. We must suppose that the damage which they report is actual, direct and positive damage, tending to the substantial impairment of the value of the property for the purpose for which it is used.   And we must conclude that the damage being of that character is such as entitles the owners of the property to just compensation for it.   Lewis on Eminent Domain, Sec. 464, and cases cited in notes; *Boom Co.* v. *Patterson*, 98 U. S. 403.

4. Exception was taken on behalf of the District of Columbia to the instruction given by the court below to the commissioners to estimate the value of the property of Prospect Hill Cemetery with reference to its present uses, namely, the purposes of a cemetery.   But an instruction more favorable to the District than this could not well have been given.   It is questionable whether it was not error as against the Prospect Hill Cemetery, inasmuch as that company was entitled not only to the value of its lands for their present use, but to their value for any other reasonable use for which they were adapted.   *Boom Co.* v. *Patterson*, 98 U. S. 403.   Certainly the District of Columbia has no just right to complain of the instruction.

5. The court below disallowed the claim of benefits as against the owners of the Barbour tract.   The disallowance was based upon the ground that the statute made no provision for the assessment either of benefits or of damages.

The question of assessments upon adjacent property for supposed benefits accruing to it from abutting public improvements is one that has given rise to great discussion and great contrariety of judicial opinion. While it would seem to be just and reasonable in theory that those specially benefited by a public improvement should be specially assessed for the cost of it, we believe that in no case has there ever been recourse to such special assessment without specific statutory authority to levy the assessment. To charge upon private individuals the cost of a public improvement or any proportionate share of such cost, even if such proceeding be found to be free from the apparent inconsistency which it seems to involve, certainly cannot be done without warrant of a statute distinctly so providing. Most extraordinary and unjustifiable would it be to levy such assessment before the proposed improvement was even begun. And yet this would be the precise effect of an attempt to set off against the just compensation payable for land sought to be condemned for the purposes of a street the possible benefits that might accrue to adjoining land from the opening of such street. Even if the just compensation payable under the guarantees of the Constitution could be violently construed as payable in land, or in the increased value of land, or in some possible or problematical benefit or advantage or convenience that may inure to a person, it would be in any event payment for present loss by a mere promise, that might never be realized, of future advantages. If these supposed advantages can be made the subject of legislative cognizance otherwise than by enhanced assessment, for ordinary taxation, it is time enough so to make them when the improvement has become an accomplished fact. It is not reasonable or just to pay for land taken for the public use in promises of increased values for the remainder that may have no foundation in fact.

We are of opinion, therefore, that the court below was right in its refusal to charge against the owners of the Bar-

bour tract the value of the supposed benefits that were to accrue to the remainder of their property from the proposed extension and opening of North Capitol street, or to allow such proposed benefits to be set off against the value of the land proposed to be taken.

6. There remains the question whether the adjudication by the court below of the matter of values was a final and conclusive adjudication between the parties which precludes further or other proceedings by the public authorities for the condemnation of the land sought to be taken. This is the question raised by the bill in equity filed on behalf of the heirs of David Moore, and it is also involved to some extent in the attempt to vacate the order of confirmation, and in the act of Congress directing such action and the institution of new proceedings for condemnation.

Proceedings for the condemnation and appropriation of private property for public use are somewhat exceptional in our jurisprudence. Such appropriation was so rare under the common law as to have scarcely had any provision made for it under that system of jurisprudence; and although in the present century the exercise of the right of eminent domain has become frequent enough, not only by Government directly for its own immediate purposes, but likewise by the numerous corporations, public or quasi-public, that have been created for the construction and operation of works of public improvements, such as railroads, telegraphs, and the like, yet it is rather singular that in the matter of procedure for its exercise there has been so little attempt for its thorough and systematic regulation by statutory enactment. The whole matter has usually been remitted, with all its difficult questions, both of law and fact, to the determination of a jury hastily and perhaps capriciously summoned by a sheriff or marshal, and loosely acting according to their own good will and pleasure, without guidance or control by any court or tribunal competent to instruct them

in the principles of the law that should govern such proceedings. In the present instance there is a nearer approach than usual to the regularity of judicial procedure; and in pursuance of a statute intended to be generally applicable in all such matters, although plainly defective in its provisions, the action of a court of justice is invoked, with suitable machinery for the determination of the issue involved between the parties in interest, who are, on the one side, the representatives of the public authority, and on the other, the persons whose lands it is proposed to take. The representatives of the public authority have inaugurated the proceeding, as it was their duty to do under the statute, by filing their petition in the Supreme Court of the District of Columbia sitting as a District Court of the United States, in which they requested the appointment of commissioners for the appraisement and valuation of the lands. The sole issue raised by the proceedings was the value of the private property which it was proposed to appropriate to the public use. The determination of that value was the sole object of the proceedings, and when that value was determined in the mode prescribed the functions of the court were at an end, and the respective rights of the parties in the premises were fixed. The final action of the court in the case was a solemn and binding adjudication to the effect that, if the public authorities elected to take the land in question, which, so far as the owners were concerned, they were still free to take or not, as they should think proper, they should be entitled to do so upon the payment therefor to such owners of the value which was adjudged to be their just compensation.

If these proceedings are to be regarded as legitimate legal proceedings, and not as a mere farce, the public authorities are as much bound by them as the owners of the land. It requires neither elaboration of argument nor citation of authorities to show that, when the State becomes a party to a suit it is as much bound by the judgment or decree as an individual. It may not litigate the matter again any more

than an individual would be entitled to litigate it. Subject only to the same rules of law that would govern in the case of individuals, the adjudication is absolutely binding and conclusive upon the State; and no action, either of its legislative or of its executive department, could be construed to give such adjudication less binding force than it would have between individuals. This position we must regard as elementary and fundamental.

Applying this doctrine to the case before us, if we regard the order of confirmation made by the court below as a final adjudication of the question of value which was in issue between the parties, that adjudication was binding upon the District of Columbia and upon its Commissioners to the same extent as upon the owners of the land, and was a final and conclusive adjudication of that question, subject only to be affected by some of the methods known to the administration of the law for the vacation or reversal of judgments and decrees. It will scarcely be questioned that, if the District of Columbia were satisfied with the valuation, and the owners of the land were dissatisfied with it, the latter would still be compelled to part with their land for the price adjudged to be its value. Can it be allowed that they would be bound and yet not the District? And can the latter be permitted to weary out the owners with successive inquisitions until they procure a finding that is satisfactory to them? The statement of the question would seem to carry its answer with it.

We are referred to two cases in which the question has arisen, and where it has been emphatically solved against the contention maintained here on behalf of the District of Columbia. One of these is the case of *Rogers* v. *City of St. Catharines*, 3 Mo. App. 41, and the other is that of *Schneider* v. *The City of Rochester*, in the Supreme Court of the State of New York, 61 N. Y. S. R. 63. No authority is cited to the contrary, and we presume none could be. Certainly we could not regard as of much value any authority that would

sanction the inequality and injustice that would be involved in the contrary opinion.

We conclude that, if the order in question is to be regarded as a final adjudication of the question in issue, neither the District of Columbia, nor its Commissioners, nor the Congress of the United States, nor the Government of the United States in any of its departments or branches, is at liberty to regard such adjudication as otherwise than a finality; and there is no more power in Congress to direct the court to set aside such an order than there would be to give a similar direction with reference to any other judgment or decree of the court. But if, on the contrary, the order is not a final adjudication, but only an interlocutory proceeding, and if it should be admitted that, as an interlocutory proceeding, it remained within the control of the court below, and that control was subject to be affected by the act of Congress, which we have no doubt was the theory of those who procured the passage of the act, then this appeal was improperly taken by the District of Columbia; for there is no right of appeal to this court from an interlocutory order, except as specially allowed. And the appeal, upon that assumption, would have to be dismissed. We must suppose that the act of Congress was passed under a misapprehension of the existing conditions.

We do not mean, of course, to be understood as holding that the United States or the District of Columbia may not withdraw from the purpose of appropriating the lands in question to public use, and that they may not at some future time renew that purpose, and take the appropriate steps to carry it into effect. There is no reason why a purpose once abandoned, in good faith, may not, under other circumstances and other conditions, be renewed. We are not called upon to determine here the circumstances and conditions under which such renewal may be had, so as to justify an entirely new inquisition of damages, without reference to the previous adjudication. We can only deal with cases as they

arise. What we here mean to hold is, that the public authorities, in the pursuit of an avowed purpose to acquire certain lands by condemnation for the public use, may not, while persisting in the avowal of such purpose, withdraw from the inquisition which they have caused to be had, disregard the result of that inquisition and the judgment of the court thereon, because they are dissatisfied with that result, and seek by other methods to procure a smaller valuation of the desired property.

Upon the whole, we are of opinion that the decree of the court below in the equity suit of Moore and others against the District of Columbia and others, which is No. 420 on our docket, should be affirmed with costs; that the appeal of the District of Columbia from the order of the court below of December 22, 1894 (No. 419), should be dismissed, with costs; and that the order of confirmation (Appeals Nos. 359 and 373) should be modified so as to include the allowance of the sum of $5,962 to Prospect Hill Cemetery as damages to its remaining property, and so modified should be affirmed, with costs. For that purpose, the cause of the District of Columbia *v.* Prospect Hill Cemetery and others, entitled " No. 383, District Court," will be remanded to the Supreme Court of the District of Columbia, with directions so to modify its order. And it is so ordered.