# DISTRICT OF COLUMBIA *v.* WASHINGTON STEEL & ORDINANCE COMPANY.*

EMINENT DOMAIN; DISCONTINUANCE; RES JUDICATA; PUBLIC USE.

1. A proceeding to condemn property for public use is not in the nature of a contract between the owner and the condemning party, and, in the

---

*Eminent Domain—Discontinuance of Proceedings.*—The authorities passing upon the right of the condemning party to dismiss condemnation

absence of any statutory provision showing a legislative intent to the contrary, condemnation proceedings may be discontinued by the condemning party at any time before the right of the property owner has become complete. (Following *District of Columbia* v. *Hess*, 35 App. D. C. 38.)

2. A motion by property owners to dismiss a proceeding by the Commissioners of the District of Columbia under the act of Congress of May 10, 1910 (36 Stat. at L. 353, chap. 225), to condemn land for a road along the Anacostia River as far as Giesboro Point, on the ground that they were concluded by the verdict of a jury in a similar proceeding, which had been instituted, but dismissed by the Commissioners before judgment had been entered on the verdict, is properly denied where it appears that in the first proceeding the Commissioners sought the condemnation of land beyond Giesboro Point, contrary to the provisions of the statute, and the jury awarded damages for land beyond that point, and also ignored the provisions of the statute by failing to assess one half of the total damages as benefits, and it appears that the proceeding had been dismissed in good faith. (Citing *Henderson* v. *MacFarland*, 33 App. D. C. 312.)

3. Where a statute provides for the condemnation of land for a public highway and for park purposes, the purpose is to acquire the land for a public use, and the court will not inquire either into the necessity or expediency of the exercise of the right of eminent domain, as these questions are purely for the legislative branch of the government.

No. 2742.   Submitted February 3, 1915. Decided March 29, 1915.·

HEARING on an appeal by the District of Columbia from an order of the Supreme Court of the District dismissing its petition for the condemnation of land.     *Reversed.*

proceedings after award or verdict and before confirmation or judgment are reviewed in the note to *District of Columbia* v. *Hess*, 28 L.R.A.(N.S.) 91.

*Eminent Domain—Public Use—Judge of Necessity.*—For cases passing upon the question where the power rests to decide what is a public use, see note to *Henderson* v. *Lexington*, 22 L.R.A.(N.S.) 50. And for cases passing upon the question where the power rests to determine the necessity or expediency of the exercise of the power of eminent domain, see note to *Henderson* v. *Lexington*, 22 L.R.A.(N.S.) 64.

The COURT in the opinion stated the facts as follows:

Appeal from a final order in the supreme court of the District dismissing the petition of the District of Columbia, appellant here, for the condemnation of a strip of land defined in the act of May 10, 1910, entitled "An Act to Authorize the Opening of a Road Along the Anacostia River in the District of Columbia." 36 Stat. at L. 353, chap. 225. That act reads in part as follows:

"The Commissioners of the District of Columbia be, and they are hereby, authorized and directed to institute in the supreme court of the District of Columbia a proceeding *in rem* to condemn and acquire the fee simple and absolute title, including all riparian rights and all other rights pertaining thereto, to a strip of land for a public highway and for park purposes along the Anacostia River and bounded by said river, from Monroe street extended to the right of way of the outfall sewer at and near Poplar Point, and from the southwest corner of the grounds of the Government Hospital for the Insane along said Anacostia River to Giesboro Point, near the western terminus of Memphis street, as shown on the permanent system of highway plans for the District of Columbia. The northern and western boundary of said strip of land shall be coincident with the high-water line of the said Anacostia River, and the southern and eastern boundary of the said strip of land shall be not more than one hundred and sixty feet therefrom: *Provided,* that of the amount found due and awarded as damages for and in respect of the land condemned under this act for the said public highway and park not less than one half thereof, together with all the costs and expenses of the proceeding or proceedings taken pursuant hereto, shall be assessed as benefits by the jury in said proceeding against the lots, pieces, or parcels of ground lying on the side or sides of the extension of the said public highway and park, and also on all or any adjacent pieces or parcels of land which will be benefited by the said public highway and park as herein provided."

Proceedings were duly instituted by the Commissioners, un-

der authority of this act, but in their petition the strip of land sought to be condemned extended 1,000 feet *beyond* Giesboro Point. This proceeding resulted in a verdict on June 19, 1912, awarding damages amounting to $51,367.19, and assessing benefits in the sum of $3,045.62. Of the amount awarded as damages, $26,508.32 was awarded for the 1,000 feet beyond Giesboro Point. Thereupon, and before any judgment was entered upon the verdict, the Commissioners dismissed the proceedings, and thereafter instituted the proceeding here involved, in which they sought the condemnation of the strip of land described in the act and terminating at Giesboro Point. Appellees filed a motion to dismiss this petition, alleging as the grounds therefor that the Commissioners are concluded by the former finding; that the use for which the land is sought to be condemned is not such a public use as would justify the exercise of the right of eminent domain, and that there is no necessity for the taking of this land.

*Mr. Conrad Il. Syme,* Corporation Counsel, and *Mr. Jas. Francis Smith,* Assistant, for the appellant.

*Mr. John C. Gittings, Mr. J. Morrill Chamberlin, Mr. Geo. Francis Williams, Mr. Ralph P. Barnard,* and *Mr. Guy H. Johnson* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

In *District of Columbia* v. *Hess,* 35 App. D. C. 38, 28 L.R.A. (N. S.) 91, it was ruled that a proceeding to condemn property for public use is not in the nature of a contract between the owner and the condemning party, and that, in the absence of any statutory provision showing a legislative intent to the contrary, condemnation proceedings may be discontinued by the condemning party at any time before the right of the property owner has become complete. The cases there cited, including *Garrison* v. *New York,* 21 Wall. 196, 22 L. ed. 612, fully sustain that ruling.

In the present case the Commissioners were authorized by said act to condemn a strip of land along Anacostia River, "from Monroe street extended to the right of way of the outfall sewer at and near Poplar Point, and from the southwest corner of the grounds of the Government Hospital for the Insane along said Anacostia River *to Giesboro Point, near the western terminus of Memphis street,* as shown on the permanent system of highway plans for the District of Columbia." An inspection of the map attached to the record indicates that Congress did not intend to authorize the condemnation of land beyond Giesboro Point. This point, which is near the western terminus of Memphis street, apparently is at the eastern terminus of the deepwater channel of the river. The land beyond that point would therefore be much more valuable. This fact was clearly demonstrated by the award of the jury. It was therefore a serious question whether, in the first proceeding, the Commissioners had not exceeded their authority when they attempted to condemn 1,000 feet beyond this point. Accordingly, when the jury awarded such a large sum as damages for this strip, the right to condemn which was at least very questionable, and ignored the directions of the statute by failing to assess one half the total damages as benefits (*Henderson* v. *MacFarland,* 33 App. D. C. 312; *Briscoe* v. *Rudolph,* 221 U. S. 547, 551, 55 L. ed. 848, 850, 31 Sup. Ct. Rep. 679), the Commissioners were fully within their rights in deciding to discontinue the proceeding. No judgment having been entered, the discontinuance amounted merely to taking a nonsuit. It follows that the discontinuance, in good faith, of the first proceeding, was not a bar to the institution of the second. *Kansas City* v. *Mulkey,* 176 Mo. 252, 75 S. W. 973; *Cincinnati S. R. Co.* v. *Haas,* 42 Ohio St. 239; *Garrison* v. *New York,* 21 Wall. 196, 22 L. ed. 612.

The suggestion is made by counsel for appellees that the Commissioners after the first verdict, instead of discontinuing the entire proceeding, might have asked the court to vacate it as to the ground beyond Giesboro Point. To this suggestion counsel for the Commissioners answer that it was impossible to tell whether the taking of the 1,000-foot strip on the deep-water

channel was not responsible for the failure of the jury to assess greater benefits against the remaining land of the owner of this strip. Reading the whole record, we entertain no doubt as to the good faith of the Commissioners in discontinuing the first proceeding.

The act declares in plain and unambiguous language that the land is to be condemned "for a public highway and for park purposes." This being a public use, the court will not inquire into either the necessity or expediency of the exercise of the right of eminent domain, since these questions are purely for the legislative branch of the government. *Baltimore Boom Co.* v. *Patterson,* 98 U. S. 403, 25 L. ed. 206; *Shoemaker* v. *United States,* 147 U. S. 282, 37 L. ed. 170, 13 Sup. Ct. Rep. 361; *United States* v. *Gettysburg Electric R. Co.* 160 U. S. 668, 40 L. ed. 576, 16 Sup. Ct. Rep. 427.

The judgment will be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.                                    *Reversed.*