## COMMISSIONER OF INTERNAL REVENUE v. KIESELBACH et al.

### No. 7912.

Circuit Court of Appeals, Third Circuit.

Argued March 2, 1942.

Decided April 7, 1942.

Samuel H. Levy, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Harry Friedman, of Washington, D. C. (Julien W. Newman, of New York City, on the brief), for respondent.

Before CLARK, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The taxpayer, Henry Kieselbach, inherited from his father a parcel of real property in the City of New York on April 2, 1927. In 1930 the City of New York began condemnation proceedings in the Supreme

Court of New York; an order was entered authorizing the taking of the property by the City and providing that compensation would be determined by the Court. The resolution of the New York Board of Estimate and Apportionment, passed pursuant to § 976 of the Greater New York Charter, provided that fee title of the property should become vested in the City January 3, 1933. The City took possession on this date and rents thereafter accruing were collected by or turned over to it. Following litigation as to the amount of compensation, the court on March 31, 1937 entered a final decree entitling the taxpayer to $73,246.57, computed by adding to the principal sum of $58,000 interest thereon at 6% per annum from January 3, 1933 to May 12, 1937. The amount fixed in the decree was paid to the taxpayer on the latter date. No deposit or security to cover compensation was given by the City prior to final payment.

The case is brought to this court by the Commissioner from the decision of the Board of Tax Appeals. It embraces three questions, involving the application and interpretation of § 117 of the Revenue Act of 1936. That section provides for the taxation of capital gains and losses upon the sale or exchange of capital assets.[1] The first question is whether the gain realized from the condemnation of the taxpayer's property was gain from a sale of a capital asset. The second is whether the amount designated as interest in the condemnation award was part of the price, and therefore to be taxed as capital gain, or was "true" interest, taxable as ordinary income when received, in 1937. The third

concerns itself with the determination of the period for which the taxpayer held this land: is the termination date May 12, 1937, when the price was paid, or January 3, 1933, when the City took fee title and possession? The points will be discussed in the order stated.

■ Is the transfer of property through condemnation proceedings to be classified as a sale within the meaning of § 117 of the Revenue Act of 1936? The answer to this question will determine whether the increase in value realized by the taxpayer is to be treated as capital gain or ordinary gain, with the corresponding difference as to the base of the tax imposed. The Commissioner makes the suggestion that in view of the statement by the Supreme Court in Helvering v. William Flaccus Oak Leather Co., 1941, 313 U.S. 247, 250, 61 S. Ct. 878, 880, 85 L.Ed. 1310,[2] condemnation of property does not effect a sale within § 117. The Commissioner advanced this position solely for the purpose of preserving the point in the event of an adverse decision in a case then pending in the Ninth Circuit. Since the instant case was argued, however, that decision has come down and the holding is squarely to the effect that taking a property by condemnation does amount to a sale within the meaning of the income tax law. Hawaiian Gas Products, Ltd., v. Commissioner of Internal Revenue, 9 Cir., 1942, 126 F.2d 4. This follows the view of the Second Circuit in Seaside Improvement Co. v. Commissioner of Internal Revenue, 2 Cir., 1939, 105 F. 2d 990; Commissioner of Internal Revenue v. Appleby's Estate, 2 Cir., 1941, 123 F.2d

[1] "(a) General rule. In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

"100 per centum if the capital asset has been held for not more than 1 year;

"80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

"60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years;

"40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years;

"30 per centum if the capital asset has been held for more than 10 years.

"(b) Definition of capital assets. For the purposes of this title, 'capital assets'

means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." 26 U. S.C.A. Int.Rev.Acts, § 117 (a) and (b), pages 873, 874.

[2] "We can find nothing in this language [i. e., the language of § 112(f), 26 U.S.C. A. Int.Rev.Acts, page 695] or in other sections of the Act which indicates, either expressly or by implication, that Congress intended to classify as 'sales or exchanges' the involuntary conversions enumerated in § 112(f)."

700 and seems to us, as it did to the courts in the other Circuits, correct, in view of Helvering v. Hammel, 1941, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481 and Helvering v. Nebraska Bridge Supply & Lumber Co., 1941, 312 U.S. 666, 61 S.Ct. 827, 85 L.Ed. 1111. We thus have the happy situation of unanimity of opinion upon a point by the Commissioner, the taxpayer, the Circuit Courts of Appeals and, we think, the Supreme Court of the United States.

The second point involves more difficulty. The Commissioner seeks to tax as ordinary income, rather than as capital gain, that part of the award designated as "interest". The taxpayer resists this on the ground that the very terms of the New York Charter, under which the compensation decree was issued, label the so-called interest "part of the compensation to which * * * owners are entitled". It is pointed out that such is the settled attitude of the courts with regard to condemnation awards and that the holding contended for here has been announced twice by the Circuit Court of Appeals for the Second Circuit. [3]

The Supreme Court has said several times in cases involving appropriation of land by the United States that the item labelled interest in the award is really part of the "just compensation" to which the property owner is constitutionally entitled. [4] We have no doubt concerning the authority or the correctness of the decisions cited. Whereas before the taking an owner was in possession of a certain piece of land, he has now, as of the time of payment, so many dollars instead. It would be far from "just compensation", if for the period of time during which the individual had neither payment nor land, he received no additional consideration. But this is not a conclusive treatment of the status of this additional sum for purposes of the Federal income tax. To say that he is entitled to it is not to speak at all with reference to the question of how he is to be taxed upon its receipt. That is a different matter.

The same analysis is equally applicable to those cases which have refused to relieve the government from paying this additional item on the ground that it was interest on an obligation of the government and therefore not collectible, in the absence of a contract to pay. [5] With those decisions too we agree. Some of them have reached the result indicated by language similar to that found in the cases cited above. Others have adopted the view that this was not the type of obligation to which the statute in question was meant to apply. Be that as it may, the significant factor is that a decision which denies the controlling effect of the "interest" statute upon the question of the plaintiff's right to compensation for the delay in payment does not at the same time answer the problem of how he is to be taxed upon it when he gets it. Again, the latter is another matter. This is not one of those cases, nor is our conclusion determined by language used in

---

[3] Commissioner of Internal Revenue v. Appleby's Estate, 2 Cir., 1941, 123 F.2d 700, 701; Seaside Improvement Co. v. Commissioner of Internal Revenue, 2 Cir., 1939, 105 F.2d 990. But note the court's statement, inter alia, in the former case: "* * * if the matter were tabula rasa not all of the court as now constituted would reach that conclusion."

[4] United States v. Klamath, etc., Indians, 1938, 304 U.S. 119, 58 S.Ct. 799, 82 L.Ed. 1219; Shoshone Tribe of Indians v. United States, 1937, 299 U.S. 476, 496, 57 S.Ct. 244, 81 L.Ed. 360; Phelps v. United States, 1927, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083; Seaboard Air Line Ry. Co. v. United States, 1923, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664.

[5] 28 U.S.C.A. § 284. Phelps v. United States, 1927, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083; Seaboard Air Line Ry.

Co. v. United States, 1923, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664.

Another group of cases involves what is now § 22(b) (4) of the Internal Revenue Code, 26 U.S.C.A., which exempts from taxation interest upon the obligations of the state or federal governments. Those decisions are to the effect that the additional payments for condemnation awards are not interest within the purview of the revenue acts. Holley v. United States, 6 Cir., 1942, 124 F.2d 909; United States Trust Co. of New York v. Anderson, 2 Cir., 1933, 65 F.2d 575, 89 A.L.R. 994; Posselius v. United States, Ct.Cl.1940, 31 F.Supp. 161; Williams Land Co. v. United States, Ct. Cl.1940, 31 F.Supp. 154. Here, too, the holdings are not at all determinative of the issue in the instant case, because the problem there was the scope of the exemption provision. Cf. American Viscose Corp. v. Commissioner of Internal Revenue, 3 Cir., 1932, 56 F.2d 1033.

those instances where the court was dealing with the problem of what makes up "just compensation". Nor do we think the answer is indicated by another group of cases involving awards by the German Mixed Claims Commission where considerations irrelevant here were prevailing there.[6] The decisions from the Second Circuit cited above are in point. But the matter is tabula rasa in this court. With great deference we believe the answer to be contrary to that reached by the Second Circuit.

■ The nature of interest in an eminent domain case is stated in 4 Sutherland on Damages, 4th Ed. 1916, 4149, as follows: "* * * on general principles interest should be given from the time when the principal should be paid, or, in other words, from the time the landowner was entitled to compensation * * * [Interest] is given, not strictly as damages, but * * * as an equitable mode of compensating the owner for the unnecessary delay in ultimately ascertaining the amount he is entitled to be paid * * *."[7] This seems to us correct. We think the interest, while part of "just compensation", was a payment to the property holder which compensated him for the delay in paying him for his land. Our first impression on the question is thus borne out. The sum of money the taxpayer received was designated as a round sum in principal with interest computed from the date of taking to the date of payment. It seems clear, even apart from everything else, that the principal sum was capital, and the part specified as interest, as we have already said, was compensation for the period during which the property owner had neither land nor money. It is, therefore, for income tax purposes, ordinary income, not capital gain.

We come now to the third and final point, involving the period of time during which the taxpayer "held" the property. There is no dispute as to when he acquired it; the difference of opinion comes as to the date at which he ceased to hold it. The Board of Tax Appeals held that date to be May 12, 1937, the day the taxpayer got his money. If that is correct he held the property for more than ten years and is to be taxed upon only 30% of the capital gain.

Upon this point we disagree with the Board of Tax Appeals. The taxpayer no longer "held" this property after he ceased to be the owner of it. Shillinglaw v. Commissioner of Internal Revenue, 6 Cir., 1938, 99 F.2d 87, certiorari denied 1938, 306 U. S. 635, 59 S.Ct. 484, 83 L.Ed. 1036. When did he cease to be the owner? According to the terms of the Greater New York Charter it was on January 3, 1933, at which time title was purportedly vested in the City. At this time, too, the City took possession and thereafter collected the rents. This is the date at which the taxpayer ceased to hold the property, unless the following of the provisions of the charter violates his constitutional rights.

The taxpayer says, however, that it would do so. It is stipulated in the facts that no deposit or security to cover compensation was given by the City prior to final payment. That being so, he contends, a taking prior to payment would be a violation of the provision of the constitutions of both the United States and New York, U.S.C.A. Const.Amend. 5; Const.N.Y. art. 1, § 7, that "private property shall not be taken for public use without just compensation". He cites Garrison v. City of New York, 1874, 21 Wall. 196, 88 U.S. 196, 22 L.Ed. 612; and Bauman v. Ross, 1897, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270. It is quite true that in the former case the condemnation decree purported, by its terms, to be "final and conclusive" and that judicial confirmation thereof resulted in passing the fee title to the City of New York. But the question there was whether or not those proceedings were "so far final and conclusive of the right of the city to the property and of the plaintiff to the award, that neither were subject to any legislative or judicial interference" [21 Wall. 202, 88 U.S. 196, 22 L. Ed. 612]. The holding on this point casts no shadow on the issue of the time as of

---

[6] Helvering v. Drier, 4 Cir., 1935, 79 F.2d 501; Commissioner of Internal Revenue v. Speyer, 2 Cir., 1935, 77 F.2d 824; Drier v. Helvering, 1934, 63 App.D.C. 283, 72 F.2d 76. In the latter case, the court declined to tax the interest as income because the total payment made from German sources would not restore the 1913 value of the property to the taxpayer. In the first two cases it was concluded that until the principal amount of the award had been fully received no part of the payment was to be allocated to interest.

[7] Also "When the time of taking is ascertained, interest on the amount of damages given follows from that date". 3 Sedgwick, Damages, 9th Ed. 1912, § 1179 (a). Note (1938) 33 Ill.L.Rev. 361. But cf. (1940) 39 Mich.L.Rev. 169.

which the property owner ceased to hold his land for purposes of the Federal income tax. The same may be said, likewise, of Bauman v. Ross.

 So far as the New York law is concerned, Kahlen v. State of New York, 1918, 223 N.Y. 383, 389, 119 N.E. 883, 885, answers the taxpayer's point. The court said that the limitation of the New York constitution "does not deny the power of the state to take to itself * * * the absolute title to specific private property, provided the statute recognizes the absolute right of the owner, upon the taking of the property, to just compensation and makes provision for the prompt determination and payment of such compensation from the public funds". Such provision for compensation is made in the charter above referred to with the appropriate appeals to preserve the rights of both parties.

That such safeguards are sufficient protection of the property owner's rights under the Constitution of the United States we find settled by adequate Supreme Court holdings to the effect that it is within constitutional limits to provide for the seizure, by eminent domain, of private property without simultaneous payment of "just compensation", as long as "adequate provision be made for compensation". Among these cases are Phillips v. Commissioner of Internal Revenue, 1931, 283 U.S. 589, 597, 51 S.Ct. 608, 75 L.Ed. 1289; Joslin Mfg. Co. v. City of Providence, 1923, 262 U.S. 668, 677–678, 43 S.Ct. 684, 67 L.Ed. 1167; Hays v. Port of Seattle, 1920, 251 U.S. 233, 238, 40 S.Ct. 125, 64 L.Ed. 243; Bragg v. Weaver, 1919, 251 U.S. 57, 62, 40 S.Ct. 62, 64 L.Ed. 135; Adirondack Ry. Co. v. New York State, 1900, 176 U.S. 335, 349–350, 20 S.Ct. 460, 44 L.Ed. 492; Sweet v. Rechel, 1895, 159 U.S. 380, 16 S.Ct. 43, 40 L.Ed. 188.[8]

We conclude, therefore, that the taxpayer ceased to hold this property on January 3, 1933. His period of holding, therefore, comes within that which is over five years and less than ten years and the tax on his capital gain is to be assessed accordingly.

The decision of the Board of Tax Appeals is reversed and the case remanded for further proceedings not inconsistent with this opinion.

CLARK, Circuit Judge, did not participate in the decision of this case.

---

[8] In the case last cited, the Supreme Court said, with reference to a case cited to it, that it "* * * by no means controverts the doctrine that the legislature may authorize a municipal corporation to take, for public use, at the outset, the absolute title to specific private property, if either the statute under which that is done, or a general statute, recognizes the absolute right of the owner, upon his property being taken, to just or reasonable compensation therefor, and makes provision, in the event of the disagreement of the parties, for the ascertainment, by suit, without unreasonable delay or risk to the owner, of the compensation to which under the constitution he is entitled, and to a judgment in his favor, enforceable against such corporation in some effective mode, so that the owner can certainly obtain the amount of such compensation". 159 U.S. page 404, 16 S.Ct. page 50, 40 L.Ed. 188.