**COMMISSIONER OF INTERNAL REVENUE v. RAPHAEL.**
**RAPHAEL v. COMMISSIONER OF INTERNAL REVENUE.**
**No. 10138.**

Circuit Court of Appeals, Ninth Circuit.

Feb. 1, 1943.

Rehearing Denied March 15, 1943.

Samuel O. Clark, Jr., Asst. Atty. Gen. and Sewall Key, Helen R. Carloss, Newton K. Fox, and Warren F. Wattles, Sp. Assts. to the Atty. Gen., for the Commissioner.

Byron C. Hanna, Harold C. Morton, and Leon B. Brown, all of Los Angeles, Cal., for Marguerite Cahn Raphael.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Marguerite Cahn Raphael, a resident of France, hereafter called the taxpayer, petitions for a review of a decision of the United States Board of Tax Appeals, now named the Tax Court of the United States, and the Commissioner of Internal Revenue also petitions for a review of the same decision.

The petitions are considered together. They involve income taxes for the fiscal year ending January 31, 1940, upon moneys received by the taxpayer in the United States upon a judgment of the United States District Court for the Southern District of California claimed by the Commissioner to be taxable as interest under § 211(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code § 211(a) (1) (A).

The suit was begun on the equity side of the court to recover certain land. It was transferred by stipulation to the law side to recover damages for divesting the predecessor in interest of the title to the land, and was tried by the judge without jury. The judgment was affirmed by this court. Anglo California National Bank v. Lazard, 9 Cir., 106 F.2d 693.

The taxpayer at all pertinent times was a non-resident alien and is one of the successors in interest to the owner of a tract of land underlain with oil deposits in Kern County, California. She and other successors in interest to the owner of the land recovered on the district court judgment against the agents of the owner for a fraudulent sale, at much less than the land's market value, of a portion of the land on May 24, 1915, $227,000, the market value of the land less the amount paid the owner by his agents, plus $26,500 due the owner for a similar sale on March 22, 1917, of another portion thereof, together with interest at 7% per annum on both amounts from the dates of the sales to the date of judgment, January 11, 1938. The interest factors in the judgment amounted to $398,079.71. The judgment was for a total of $651,579.71 and bore interest at the rate of 7% per annum. After the affirmation on appeal, the principal of the judgment plus $92,644.93 interest thereon was paid to the judgment creditors.

Taxpayer's share of the two interest awards was 17/300ths, which she received in the fiscal year in question. She filed a return stating the amounts of the two interests she received. She paid no tax, contending "that no part of the sum so received is annual or periodical gain, profit or income or subject to taxation under the Internal Revenue Code."

The Commissioner decided that, aside from a conceded exclusion of $299.04, all of the interest in the sum of $398,079.71 included in the judgment, plus the $92,644.93 paid as interest on the judgment, or a total sum of $490,425.60, constituted "fixed or determinable annual or periodical" income taxable under § 211 of the Internal Revenue Code, and determined a deficiency in tax of $3,676.18, based upon taxpayer's receipt of 17/300ths of the sum of $490,425.60. Taxpayer filed a petition with the Board for a redetermination. She then paid the whole amount to the Collector

of Internal Revenue and filed a supplemental petition asking the Board to determine an overpayment of the full amount.

The Board of Tax Appeals, in an opinion reported in 45 B.T.A. 256 under the title of Francois Lang et al. v. Commissioner, held that the $398,079.71 included in the judgment was not taxable income under § 211, but that the $92,644.93 paid as interest on the judgment was. Upon this reasoning the taxpayer's 17/300ths share of $92,-644.93, or $5,249.88, was subject to a tax of 10%, or $524.99. The Board decided that the overpayment amounted to only $3,-151.19, the difference between the sum of $3,676.18 paid and the tax of $524.99.

The taxpayer's petition here seeks to have us hold that the Board erred in deciding that the interest on the amount of the judgment constituted an amount received by the taxpayer as "annual or periodical gains, profits, and income," within the meaning of § 211(a) (1) (A) of the Internal Revenue Code, and that she is entitled to a refund of the entire amount paid the Collector.

The Commissioner claims the Board erred in failing to hold (1) that interest allowed in the judgment, as distinguished from the moneys due for the taking of the title to the land, is "interest" within the meaning of § 211(a) (1) (A), and (2) if not such interest, it is taxable as other fixed or determinable annual or periodical gains, profits and income under that section.

Section 211(a) (1) (A) of the Internal Revenue Code provides: "There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 11 and 12, upon the amount received, by every nonresident alien individual not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 10 per centum of such amount, except that such rate shall be reduced, in the case of a resident of a contiguous country, to such rate (not less than 5 per centum) as may be provided by treaty with such country."

A. *The interest on the obligation of the agents to the land owner from the date of the transfer of the title to the date of the judgment.* The obligation of a California agent to make good to his principal the money value of property of which he has fraudulently deprived his principal, and the interest thereon during the period in which the money is detained by the agent, is created by several sections of the California Civil Code. They are §§ 3274 and 3281, and §§ 1915 and 3288, as follows:

"§ 3274. *Species of relief.* As a general rule, compensation is a relief or remedy provided by the law of this state for the violation of private rights, and the means of securing their observance; and specific and preventive relief may be given in no other cases than those specified in this part of the Civil Code."

"§ 3281. *Person suffering detriment may recover damages.* Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

"§ 1915. (*Interest, what.*) Interest is the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money."

"§ 3288. *In actions other than contract.* In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."[1]

Under the California Civil Code the interest paid taxpayer is thus seen to be by statutory authorization, computed upon a statutory obligation arising from the misperformance of the agents' duty. In the California statutory obligation arising from such conduct, the interest is awarded as "interest," as distinguished from its merger in a total damage. Mary Pickford v. Bayley Bros., 12 Cal.2d 501, 526, 86 P.2d 102, 114.

It is also apparent that what taxpayer received as interest under the California statutes is taxable within the phrases of § 211(a) (1) (A), above stated, unless, as taxpayer contends, interest under the income tax Code has a different meaning. The statutory obligation to pay the owner the money value of the land was a "de-

---

[1] This section applies in court tried cases without jury. Mary Pickford v. Bayley Bros., 12 Cal.2d 501, 526, 86 P. 2d 102, 114.

terminable" amount and was determined in the judgment procured by the taxpayer. The dates the statutory obligation to pay interest on the moneys detained by the agents began to run, that is, the dates of the two sales of the land, also were determinable and determined. In every annual "period" of the several years from the sales to the judgment, there was a "periodical gain" to the taxpayer. Indeed, in the annual percentage rate there is a determinable gain for a period of but one day.

The above answers the contention of the taxpayer that the "interest" is not "determinable annual or periodical gains" within the meaning of that phrase in § 211 (a) (1) (A) of the Internal Revenue Code.

■ The taxpayer also contends that the interest from the sales' dates is not payable until the judgment, and hence, because not periodical "income," such interest is not a "periodical gain." The Act specifically applies to "periodical gain" as distinguished from periodical "income." Because the interest gain is not *payable* periodically makes it nonetheless interest income when paid. The logic of taxpayer's position would make her not taxable for interest received upon a demand note bearing interest. There is no merit in this contention.

■ Taxpayer also contends that because the obligation of the agents to the principal for a money payment is created by statute and not by contract, it is not the kind of obligation upon which the statutory interest is taxable under the Federal Code. The Supreme Court has held the contrary in construing the Congressional statute creating the obligation to pay an income tax refund. In Helvering v. Stockholms, etc., Bank, 293 U.S. 84, 55 S.Ct. 50, 51, 79 L.Ed. 211, the Court held that interest paid to a foreign corporation, having no office or place of business within the United States, on a refund of taxes was taxable income and that an obligation to refund taxes was "an interest-bearing obligation."

■ Congress did not use the term "interest" in the revenue acts with reference to "some esoteric concept derived from subtle and theoretic analysis," but in its "usual, ordinary, and everyday meaning."[2] "* * * in the common understanding, 'interest' means what is usually called interest by those who pay and those who receive the amount * * *." Old Colony R. Co. v. Commissioner, 284 U.S. 552, 561, 52 S.Ct. 211, 214, 76 L.Ed. 484. In Deputy v. Du Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416, the Supreme Court said,

"We are dealing with the context of a revenue act and words which have today a well-known meaning. In the business world 'interest on indebtedness' means compensation for the use or forbearance of money. In absence of clear evidence to the contrary, we assume that Congress has used these words in that sense."

"* * * interest * * * does depend on time." Meilink v. Unemployment Reserves Commission, 314 U.S. 564, 570, 62 S.Ct. 389, 392, 86 L.Ed. 458. That case held that the "interest" of twelve per cent per annum imposed by section 45 of the California Unemployment Reserves Act Deerings Gen.Laws 1937, Act 8780d upon delinquent payments to the California Unemployment Reserves Commission was true interest and not a penalty and, therefore, that a claim for the full amount of it was allowable in bankruptcy. To substantially similar effect see United States v. Childs, 266 U.S. 304, 307, 310, 45 S.Ct. 110, 69 L.Ed. 299, also a bankruptcy case, in which the Supreme Court quoted Bouvier's definition of interest as being "a consideration paid for the use of money or forbearance in demanding it when due," observed that interest is "a means of compensation," and held that the one per cent per month "interest" imposed by the Revenue Act of 1916 upon taxpayers for taxes unpaid after ten days from demand was true interest and not a penalty; that it was "clearly intended *to compensate the delay in payment of the tax—the detriment of its nonpayment,* to be continued during the time of its nonpayment—compensation, not punishment." (Emphasis supplied.)

Here the interest was given by the California statute "to compensate the delay in payment of the [obligation of the money value of the land] the detriment of its nonpayment." Any business man knowing

---

2 Cf. Helvering v. San Joaquin Co., 297 U.S. 496, 499, 56 S.Ct. 569, 570, 80 L. Ed. 824, "The term 'acquired' is not a term of art in the law of property but one in common use. The plain import of the word is 'obtained as one's own'.

Language used in tax statutes should be read in the ordinary and natural sense." To like effect see United States v. Wurts, 303 U.S. 414, 417, 58 S.Ct. 637, 82 L.Ed. 932.

that his agent owed him for several years the sum of $253,000 would naturally ask his attorney, "How about my interest during all that time?" He would not bother about whether the money was owed because of a statute rather than for non-payment for goods sold.

■ Taxpayer also contends that because the interest is contained in the sum total of the judgment as a compensation for the transfer by the agents of the title of the principal's land, it is a single compensation of total damages in which the interest from the day of the transfer of the title loses its character as compensation for the withholding of the use of the money value of the land, for which the statute creates the obligation in the agents. The contrary is held by the Supreme Court in its recent decision of January 4, 1943, in Kieselbach v. Commissioner, 63 S.Ct. 303, 87 L.Ed. ——.

In that case a New York statute authorized in a condemnation proceeding the transfer of the title of an owner's land by the City of New York. Under the statutory provisions the title passes to the city in the proceeding, prior to the determination of the value of the land, and interest is awarded to the owner so deprived of his title from the date of the deprivation to the date of the final decree. The Commissioner assessed a deficiency on the portion of the award computed as interest on the ground that such portion was ordinary income. He was reversed by the Board of Tax Appeals. The Circuit Court of Appeals for the Third Circuit reversed the Board, (127 F.2d 359). Certiorari was granted because of a conflicting decision of the Second Circuit in Seaside Improvement Co. v. Commissioner, 105 F.2d 990, the latter relied upon by the Board in its decision in this case. The Supreme Court held the interest was ordinary income, stating,

"We agree with the Court of Appeals [3 Cir., 127 F.2d 359]. The sum paid these taxpayers above the award of $58,000 was paid because of the failure to put the award in the taxpayers' hands on the day, January 3, 1933, when the property was taken. This additional payment was necessary to give the owner the full equivalent of the value of the property at the time it was taken. Whether one calls it interest on the value or payments to meet the constitutional requirement of just compensation * * * is immaterial. It is income

under Sec. 22, paid to the taxpayers in lieu of what they might have earned on the sum found to be the value of the property on the day the property was taken. It is not a capital gain upon an asset sold under Sec. 117. The sale price was the $58,000.

"The property was turned over in January, 1933, by the resolution. This was the sale. Title then passed. The subsequent earnings of the property went to the city. The transaction was as though a purchase money lien at legal interest was retained upon the property. Such interest when paid would, of course, be ordinary income." [63 S.Ct. 305, 87 L.Ed.——.]

As in that case, in the present case the title was taken from the principal in a manner imposing on the agents a statutory money liability for its transfers. Because the transfers of the titles were wrongful does not change the fixed money value of the obligation on the dates they were made. True, the amount of the obligation has to be determined by the court, but so also the obligation of the city is not determined until the trial. In both cases, what is to be determined is the value of the land.

■ Here, also, there was a failure of the agents to put in the principal's hands the moneys for which the statute created the agents' liability. The statutory interest "was necessary to give the owner the full equivalent of the value of the property at the time it was taken." The interest was authorized by § 3288 of the California Civil Code. We can see no difference in principal because this code section *authorized* the award of such interest, the authority being exercised by the court, and the New York statute which required the court to award it. Nor can we see any difference in principle because here the title was so completely taken from the land owner by the agents' acts that the owner had no lien on it for the amount of money owed him by the agents.

The Board of Tax Appeals erred in its decision that the interest on the value of the land from the date of the taking of the land to the judgment is not ordinary income.

■ B. *Interest on the judgment.* What has been said above disposes of the contention that the interest on the principal amount of the judgment is not ordinary taxable income. It is a "gain" to the taxpayer at the fixed annual percent-

age rate for the period of each day between the date of the judgment and its payment. The income tax Code does not require it to be periodic income as well as a periodic gain. The Board is correct in its decision that this interest became ordinary income to the taxpayer when paid her in the fiscal tax year ending January 31, 1940.

Reversed and case remanded with directions to enter a decision in accordance with this opinion.