Andres IGLESIAS, Plaintiff–Appellee,

v.

The UNITED STATES of America,
Defendant–Appellant.

No. 642, Docket 87–6182.

United States Court of Appeals,
Second Circuit.

Argued Feb. 26, 1988.

Decided June 1, 1988.

William Hoppen, New York City (Jillson, Bedford & Hoppen, Nathaniel F. Bedford, Robert M. Willan, of counsel), for plaintiff-appellee.

Susan P. Johnston, New York City, Asst. U.S. Atty., S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Nancy Kilson, Asst. U.S. Atty., of counsel), for defendant-appellant.

Before FEINBERG, Chief Judge, PRATT, Circuit Judge, and GLASSER,[*] District Judge.

GLASSER, District Judge:

Plaintiff, Andres Iglesias, brought this action for a refund of the income tax paid on prejudgment interest recovered by plaintiff pursuant to a United States court judgment. Plaintiff, a nonresident alien, maintains that the prejudgment interest he received was not taxable income under § 861 of the Internal Revenue Code, 26 U.S.C. § 861 (1986), and Treasury Regulation § 1.861–2(a)(1). The district court held that plaintiff was entitled to a tax refund and granted plaintiff's motion for summary judgment. We hold that the prejudgment interest plaintiff recovered falls within the category of income Congress intended to tax under I.R.C. § 861 and reverse the judgment of the district court.

*Facts*

In 1965 and 1966, plaintiff purchased shares in a Netherland Antilles mutual fund through First National City Bank (New York) ("Citibank"). The mutual fund shares were exempt from United States income tax. Citibank sold the shares in 1971 to satisfy debts owed to Citibank by corporations with which plaintiff was associated. Claiming that Citibank had converted his mutual fund shares, plaintiff sued Citibank in the United States District Court for the Southern District of New York. The district court, in an opinion filed June 22, 1979, held that Citibank had converted plaintiff's shares, and judgment was entered on July 12, 1979, awarding plaintiff (1) the value of the shares when they were converted, (2) the increase in the market value of the shares prior to trial, (3) interest on the principal from the date of conversion to satisfaction of the judgment, and (4) costs. After this court affirmed the district court's judgment, Citibank paid plaintiff $324,344.70 in satisfaction of the judgment. The prejudgment interest component of that amount was $106,429.91.

Plaintiff paid, under protest, $47,928.71 in United States income taxes, as well as interest, on the prejudgment interest component of the judgment and simultaneously filed for a refund. On October 17, 1985, plaintiff filed this action to recover the income tax and interest plaintiff had paid. In a decision dated April 29, 1987, *Iglesias v. United States,* 658 F.Supp. 856 (S.D.N.Y. 1987), the district court granted plaintiff's motion for summary judgment, denied defendant's cross-motion, and held that plaintiff was entitled to an income tax refund. The defendant appeals, claiming that the prejudgment interest received was taxable as income from a source within the United States under § 861 of the Internal Revenue Code.

*Discussion*

As a nonresident alien, plaintiff is obligated to pay income tax only on income "derived from sources within the United States" or "effectively connected with the conduct of a trade or business within the United States." 26 U.S.C. § 872. Section 861 of the Internal Revenue Code includes within the definition of income from sources within the United States "[i]nterest from the United States or the District of Columbia and interest on bonds, notes, or other interest-bearing obligations of non-corporate residents or domestic corporations," with certain listed exceptions not applicable here. 26 U.S.C. § 861(a)(1). Section 862(a)(1) provides that "interest other than that derived from sources within the United States as provided in section 861(a)(1)," shall be deemed to be income from sources without the United States.

Treasury Regulation § 1.861–2(a)(1) (1975) provides in relevant part:

Interest.

(a) In general.

(1) Gross income consisting of interest fron the United States or any agency or instrumentality thereof ..., a State or any political subdivision thereof, or the District of Columbia, and interest from a resident of the United States on a bond,

* Honorable I. Leo Glasser, United States District Judge for the Eastern District of New York, sitting by designation.

note, or other interest-bearing obligation *issued or assumed* by such person shall be treated as income from sources within the United States. Thus, for example, income from sources within the United States includes interest received on any refund of income tax imposed by the United States, a State or any political subdivision thereof, or the District of Columbia. Interest other than that described in this paragraph is not to be treated as income from sources within the United States. . . .

(emphasis added).

Plaintiff maintains that the prejudgment interest he received from Citibank is not taxable because it stands in place of nontaxable dividends which plaintiff would have received had Citibank not converted plaintiff's mutual fund shares. Plaintiff also maintains that the judgment directing Citibank to pay plaintiff prejudgment interest is not an "interest-bearing obligation issued or assumed" by Citibank as described in Treasury Regulation § 1.861–2(a)(1) because Citibank did not voluntarily take on the obligation to pay interest.

Defendant argues that the prejudgment interest paid to plaintiff is income from a source within the United States under the plain language of § 861 because the interest was paid by a United States resident, Citibank. Defendant contends Treasury Regulation § 1.861–2(a) does not narrow the scope of § 861. Defendant also maintains that the prejudgment interest component of the judgment awarded plaintiff did not constitute compensation for lost dividends.

In granting plaintiff summary judgment, the district court apparently considered both the tax-exempt nature of the converted securities as well as the language of § 861. The court held:

Defendant offers no policy reason, and I can find none, for straining the statutory language to reach such an unjust result. The language "interest-bearing obligations of residents" does not in terms or in the context of 26 U.S.C. § 861(a)(1) mean a judgment against a resident which includes prejudgment interest. If Congress had intended to tax the otherwise exempt income of non-resident aliens when the income was misappropriated by a United States resident, it would not have used the language of 26 U.S.C. 861(a)(1).

658 F.Supp. at 857–58.

■ Plaintiff's contention that the prejudgment interest was a substitute for the nontaxable dividends declared on his converted offshore shares and therefore that interest should similarly be nontaxable has no merit as the discussion which follows will, it is believed, demonstrate.

■ The modern law of conversion is derived from the common law action of trover which redressed an interference with one's interest in a chattel that was substantial enough to justify compelling the wrongdoer to pay for it as in a forced sale. That is to say, the measure of damages to which the plaintiff was entitled was the value of the property at the time and place of the conversion. For a more extended discussion, see Prosser, *The Nature of Conversion*, 42 Cornell L.Q. 168 (1957).

■ Although initially only chattels could be the objects of conversion, the tort was eventually extended to include documents which embodied an intangible right, such as stock certificates and bonds. *Pierpoint v. Hoyt*, 260 N.Y. 26, 182 N.E. 235 (1932); W. Prosser & W. P. Keeton, *The Law of Torts* 91 (5th ed. 1984); Comment, *Conversion of Choses in Action*, 10 Ford.L.Rev. 415 (1941). Where the subject of the conversion had a fluctuating value, the measure of damages was its value at the time of conversion or within a reasonable time after the discovery of the conversion, whichever is higher. "To hold otherwise would enable the defendants to enjoy the proceeds of their own wrong and deprive the plaintiff of any compensation if the converted securities should depreciate in market value after the date of the conversion." *German v. Snedeker*, 257 App. Div. 596, 597, 13 N.Y.S.2d 237, 238 (1st Dep't), *aff'd*, 281 N.Y. 832, 24 N.E.2d 492 (1939); *Wright v. Bank of Metropolis*, 110

N.Y. 237, 249, 18 N.E. 79 (1888); *In re Salmon Weed & Co.*, 53 F.2d 335, 340–41 (2d Cir.1931).

 Iglesias is correct in contending that it has long been the New York rule that to indemnify the plaintiff completely, interest is recoverable of right in an action for conversion. *Flamm v. Noble*, 296 N.Y. 262, 268, 72 N.E.2d 886, 888 (1947); *Wilson v. City of Troy*, 135 N.Y. 96, 104–05, 32 N.E. 44 (1892). As *Flamm, Wilson,* and countless other cases make plain, however, the award of interest is to *indemnify* the plaintiff for his property that was converted and not as a substitute either in amount or character for the yield the converted property would have produced.

 Other legal principles compel the conclusion that the plaintiff's position has no merit. It is well settled that when the defendant satisfies the judgment obtained against him in an action for conversion, title vests in him as of the time of the conversion which is "the date fixed by law for the compulsory purchase." 1 F. Harper, F. James, & O. Gray, *The Law of Torts* 171 (2d ed. 1986). The satisfaction of the judgment in the plaintiff's action against Citibank vested title to the converted shares in Citibank as of the date of the conversion and the plaintiff had nothing more to do with those shares. W. Prosser & W. P. Keeton, *The Law of Torts* 89–90 (5th ed. 1984).

The interest awarded by the terms of the judgment that was entered by the district court was 7½% from December 22, 1971, to August 31, 1972, and 6% from September 1, 1972, to the date of the satisfaction of the judgment. The interest rates were those prescribed by N.Y.Civ.Prac.L. & R. § 5004 which were 7½% from July 1, 1968, to September 1, 1972, and 6% from September 1, 1972, until June 25, 1981, when the rate was increased to 9%. 5 J. Weinstein, H. Korn, & A. Miller, *New York Civil Practice* § 5004.01 (1987). There is no indication that the interest awarded bore any relationship to the price/earnings ratio of

the converted shares. Instructive in this regard is *Govin v. De Miranda*, 140 N.Y. 474, 35 N.E. 626 (1893). The plaintiff there brought an action to recover certain bonds which were wrongfully withheld by the defendant. Although the bonds bore interest at 4%, the plaintiff was held entitled to interest at the legal rate of 6%. The court stated:

It would be a hard measure of justice for the plaintiffs, first to award them the value of their bonds at a reduced sum because they bore but four per cent interest, and then to allow them but four per cent interest upon this reduced valuation. The plaintiffs are in the same position as if they had brought an action of trover to recover the value of the bonds, and they should be allowed such interest as they would have been allowed in such an action.

140 N.Y. at 479, 35 N.E. 626. That case is also instructive for its recognition that the rate of interest the bonds yield is factored into the determination of their market value, just as the price/earnings ratio and nontaxable character of dividends were factored into the determination of the market value of the plaintiff's shares.

In holding that the prejudgment interest was not encompassed by the statute and the Treasury Regulation the district court overlooked the Supreme Court's interpretation of the relevant statutory language in *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211 (1934), and unduly restricted the scope of § 861. We hold that neither the statute nor the regulation affords plaintiff a basis for an income tax refund.

Section 861 broadly provides that interest received by nonresident aliens "on bonds, notes, or other interest-bearing obligations of noncorporate residents or domestic corporations" is taxable. In *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211 (1934), the Supreme Court interpreted almost identical language of a predecessor statute[1] and

---

1. *Stockholms* involved § 217 of the Revenue Act of 1926 which provided for taxation of interest received by nonresident aliens "on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise."

held that interest on a tax refund paid by the United States to a nonresident alien was taxable interest on an interest-bearing obligation of a United States resident.

The Court in *Stockholms* held that the term "interest-bearing obligation" should be given an inclusive effect and encompasses interest on an income tax refund. The Court stated: "Obviously, an obligation upon which by express statutory direction interest must be paid is an interest-bearing obligation." 293 U.S. at 86, 55 S.Ct. at 51. The Court rejected the argument that the rule of *ejusdem generis* limited the term "interest-bearing obligation" to obligations akin to notes and bonds. 293 U.S. at 90–91, 55 S.Ct. at 52–53. The Court emphasized that the statute should be read broadly to make income taxable unless it is specifically excluded:

> The general object of this act is to put money into the federal treasury; and there is manifest in the reach of its many provisions an intention on the part of Congress to bring about a generous attainment of that object by imposing a tax upon pretty much every sort of income subject to the federal power. Plainly, the payment in question constitutes income derived from a source within the United States; and the natural aim of Congress would be to reach it.

293 U.S. at 89, 55 S.Ct. at 52.

When the precepts of *Stockholms* are applied here, the taxability under § 861 of the prejudgment interest paid by Citibank becomes manifest. The interest received by plaintiff was interest from a source within the United States, and payment pursuant to a United States court judgment applying the New York statutory provision for prejudgment interest is no less payment on an "interest-bearing obligation" than is the payment of interest on an income tax refund pursuant to statutory directive.[2] In holding that the prejudgment

interest received by plaintiff is taxable under § 861, the court is in agreement with apparently the only other circuit court decision concerning the taxability of prejudgment interest received by a nonresident alien. *Commissioner v. Raphael*, 133 F.2d 442, 445 (9th Cir.), *cert. denied*, 320 U.S. 735, 64 S.Ct. 34, 88 L.Ed. 435 (1943) (emphasizing that the term "interest" should be given its common meaning of "compensation for the use or forebearance of money.")

Plaintiff maintains, however, that the prejudgment interest paid by Citibank does not fall within the category of taxable income set forth in Treasury Regulation § 1.861–2(a)(1). The court is inclined to agree with plaintiff that the words "issued or assumed" modifying "interest-bearing obligation" in the regulation introduce an element of voluntariness which is not present in a court order requiring the payment of prejudgment interest. Were the taxability of the interest at issue dependent solely on Treasury Regulation § 1.861–2(a)(1), the interest received by plaintiff might well be nontaxable.

■ A regulation, however, may not serve to amend a statute, *Koshland v. Helvering*, 298 U.S. 441, 447, 56 S.Ct. 767, 770, 80 L.Ed. 1268 (1936), or to add to the statute "something which is not there." *United States v. Calamaro*, 354 U.S. 351, 359, 77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394 (1957). As stated in *Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528 (1936):

> The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but

---

**2.** The court's examination of the legislative history of § 861 of the Internal Revenue Code has not revealed any materials bearing on Congressional intent as to the tax treatment of prejudgment interest paid to nonresident aliens. Under *Stockholms* one presumes that Congress intended to tax such interest absent any indication to the contrary.

operates to create a rule out of harmony with the statute, is a mere nullity.

*See Goodson–Todman Enterprises, Ltd. v. Commissioner*, 784 F.2d 66, 74 (2d Cir. 1986) ("A Treasury regulation may therefore be declared invalid ... if it is unreasonable or clearly contrary to the language or spirit of the statute it purports to implement"); *Bank of New York v. United States*, 526 F.2d 1012, 1018 (3d Cir.1975) ("Treasury regulations must be interpreted in the context of the statute they are designed to explicate; 'there is no power to amend [a statute] by regulation' ") (quoting *Koshland v. Helvering*); *World Service Life Insurance Co. v. United States*, 471 F.2d 247, 250 (8th Cir.1973) ("if the regulation adds to or subtracts from the intended Congressional interpretation, then it must be held invalid").[3]

The prejudgment interest received by plaintiff is taxable under § 861 of the Internal Revenue Code. To the extent that Treasury Regulation § 1.861–2(a)(1) alters the scope of the statute by excluding prejudgment interest from taxable income, the regulation is a nullity. Plaintiff is therefore not entitled to an income tax refund and the judgment of the district court granting plaintiff's motion for summary judgment and denying defendant's cross-motion for summary judgment is reversed.

**3.** Plaintiff argues that Treasury Regulation § 1.861–2(a)(1) is binding on the Internal Revenue Service and cites decisions holding that taxpayers are entitled to rely on Treasury Regulations. The holdings of those decisions, however, are based on the premise that the regulations at issue are consistent with the statutes they implement. *Lansons, Inc. v. Commission-er*, 622 F.2d 774, 776–77 (5th Cir.1980); *Tipton & Kalmbach, Inc. v. United States*, 480 F.2d 1118, 1121 (10th Cir.1973); *Pacific Nat. Bank v. Commissioner*, 91 F.2d 103, 105 (9th Cir.1937). Moreover, there is no indication in this case that the plaintiff in any sense acted in reliance on the regulation.